DAVID SHRIVER JUNIOR'S LESSEE *v.* MARY LYNN, WILLIAM LYNN, GEORGE LYNN, JOHN G. LYNN, JAMES C. LYNN, ELLEN JANE LYNN, MARY MAGRUDER, JONATHAN W. MAGRUDER, ANNA B. TILGHMAN, FREDERICK AUGUSTUS SCHLEY, (WHO MARRIED WITH FRANCINA C. LYNN DECEASED, DAUGHTER OF DAVID LYNN) FREDERICK AUGUSTUS SCHLEY, WILLIAM HENRY SCHLEY, AND ELIZA M. SCHLEY (CHILDREN OF FREDERICK A. SCHLEY AND FRANCINA HIS WIFE) DEVISEES OF DAVID LYNN.

The following words in a will, viz.: "I give and bequeath unto my brother, E. M., during his natural life, 100 acres of land. In case the said E. M. should have heirs lawfully begotten of him in wedlock, I then give and bequeath the 100 acres of land aforesaid, to him, the said E. M., his heirs and assigns for ever; but should he, the said E. M., die without an heir so begotten, I give, bequeath, devise, and desire, that the 100 acres of land aforesaid, be sold to the highest bidder, and the money arising from the sale thereof, to be equally divided amongst my six children," give to E. M. only an estate for life, and not a fee-simple conditional.

Under the statute of Maryland, passed in 1785, (1 Maxcy's Laws, chap. 72,) the chancellor can decree a sale of land upon the application of only a part of the heirs interested; and as he had jurisdiction, the record must be received as conclusive of the rights adjudicated.

The decree of the chancellor must be construed to conform to the sale prayed for in the petition, and authorized by the will; and a sale beyond that is not rendered valid by a final ratification.

A sale ordered by a court, in a case where it had not jurisdiction, must be considered as inadvertently done, or as an unauthorized proceeding; and, in either branch of the alternative, as a nullity.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Maryland, and was an ejectment for 100 acres of land, lying in Alleghany county, in that state.

The plaintiff, who was also plaintiff in the court below, claimed title under a sheriff's sale; but the opinion of the court, upon a case stated, being against him, he brought it up to this court.

The facts were as follows:

In 1789, Zachariah Magruder was in possession of a tract of land called George's Adventure, containing 456 acres. His title was admitted, upon all sides, to be good:

In that year he made his will, which contained the following be-

quest to his wife: I also give to my said beloved wife the full use of my dwelling plantation, containing in the whole, cleared and uncleared, after the legacy hereafter given is taken out, about 356 acres, called George's Adventure, to be by her peaceably and quietly possessed and enjoyed without molestation during her natural life.

After sundry other bequests, he goes on to say,

Item.—I give and bequeath unto my brother, Elias Magruder, during his natural life, 100 acres of land, being part of a tract of land called George's Adventure, lying and being in Washington county, and state aforesaid; to be laid off at the upper end of the tract aforesaid, so as to include the plantation whereon he now lives. In case the said Elias Magruder should have heirs lawfully begotten of him in wedlock, I then give and bequeath the 100 acres of land aforesaid to him, the said Elias Magruder, his heirs and assigns, for ever; but should he, the said Elias Magruder, die without an heir so begotten, I give, bequeath, devise, and desire, that the 100 acres of land aforesaid be sold to the highest bidder, and the money arising from the sale thereof to be equally divided among my six following children, to wit: Samuel Beall Magruder, William B. Magruder, Richard Magruder, Josiah Magruder, Norman Bruce Magruder, and Nathaniel Beall Magruder.

Item.—I devise, give, bequeath, and desire, that the remaining part of my land, called George's Adventure, being about 356 acres, lying and being in Washington county, and state aforesaid, to be sold to the highest bidder, by, and at the discretion of my executrix and executor hereafter named; and the money arising from such sale to be divided equally amongst my six sons, to wit: Samuel Beall Magruder, William Beall Magruder, Richard Magruder, Josiah Magruder, Norman Bruce Magruder, and Nathaniel B. Magruder.

After some further provisions, the testator appointed his wife and son executrix and executor.

In 1796 Zachariah Magruder died, and his brother Elias took possession of the 100 acres, which were laid off agreeably to the directions of the will. The title of the defendants is derived wholly from Elias Magruder, who conveyed the 100 acres to David Lynn, their ancestor, in fee-simple in 1806.

In 1805, four of the six children mentioned in the will, filed a petition in the high court of Chancery of Maryland, stating that the executrix was dead; that the letters testamentary which had been granted to the executor had been revoked; that no sale of the real

estate had been made; that the testator devised that the remaining part of his land called George's Adventure, being about 356 acres, should be sold to the highest bidder, and the money equally divided amongst his six children, including the petitioners. The petition prayed the court to grant them relief, by appointing a trustee to sell all the property devised to be sold, and apply the proceeds to the purposes directed by the will.

The chancellor granted the prayer, and decreed that the real estate directed to be sold in the will, should be sold, and appointed a trustee in the usual way.

The decree ran thus: "That Roger Perry be, and he is hereby appointed trustee for making the said sale, and that the course and manner of his proceedings shall be as follows: He shall first file with the register of this court a bond executed by himself and a surety or sureties approved by the chancellor," &c. &c.

The decree was passed at December session, 1805.

On the 10th of March, 1806, Elias Magruder conveyed to David Lynn, as has been already stated, the 100 acres of land upon which he, Elias, lived.

On the 22d of March, 1806, the trustee proceeded to sell the 356 acres mentioned in the will, stating in his report that he excepted the 100 acres devised to Elias Magruder, saying, "The 100 acres, part of said tract devised to be sold in case Elias Magruder should die without heirs, as expressed in the will, still remains unsold."

The report passed through the regular process, and was finally ratified in June, 1807; the nett proceeds of sale being equally amongst the six children of Zachariah Magruder.

At some period, prior to the 1st of January, 1812, Elias died unmarried, not having at the time of his decease, nor ever having had, any heir or issue begotten by him in wedlock.

On the 15th of February, 1812, the trustee proceeded to sell, as he said in his report, "all the remaining part of the real estate of Zachariah Magruder, deceased, consisting of 100 acres of land, part of a tract of land called George's Adventure, it being that part devised to Elias Magruder," when Walter Slicer became the highest bidder and purchaser.

This report was finally ratified in February, 1813; and, in August, 1813, the trustee executed a deed to Slicer, describing the 100 acres by the same metes and bounds by which they had been originally located when Elias Magruder took possession under the will.

Shriver's Lessee *v.* Lynn et al.

In October, 1817, one Arnold, for the use of David Shriver, junior, the lessor of the plaintiff in this cause, and one Lamar, for himself, brought suits against Slicer in the county court of Alleghany county; and in February, 1818, one Evans, also for the use of Shriver, brought suit against Slicer in the same court.

The defendant in the present case relying, as a ground of defence, upon an outstanding title existing in Lamar or his heirs under these proceedings, and the plaintiff resting his title wholly upon them, their progress is exhibited in a tabular form, showing the history of each one, up to the consummation by a sale of the 100 acres now in dispute.

| ARNOLD | EVANS | LAMAR |
|---|---|---|
| 1817. Sues Slicer. | | Sues Slicer. |
| 1818. Gets judgment against Slicer. Judgment superseded. | Sues Slicer. | |
| 1819. June—Sues out Fi. Fa. October—Fi. Fa. countermanded. | April 20. Gets judgment. June—Issues Fi. Fa. October—Fi. Fa. countermanded. | April 28. Gets judgment. October—Issues Fi. Fa. |
| 1820. | February 2d. Fi. Fa. "to lie." | February—Injunction on the judgment. |
| 1821. | | |
| 1822. | | April—Answer filed. October—Injunction dissolved. |
| 1823. December 31. Sci. Fa. issued. | December 31. Sci. Fa. issued. | 2d. Fi. Fa. 100 acres sold to Lamar. In September sheriff makes deed. |
| 1824. Fiat. Fi. Fa. issued. 100 acres sold to Shriver by sheriff. | Fiat. Fi. Fa. issued. 2d Fi. Fa. 100 acres sold to Shriver by sheriff. | |
| 1825. Sheriff makes deed to Shriver. | Sheriff makes deed to Shriver. | |

In 1827, Shriver, the purchaser under the two elder judgments, brought suit in the Circuit Court of the United States, he being at that time a citizen of Virginia, against David Lynn, the assignee of Elias Magruder, as already stated.

In 1836, the death of David Lynn was suggested and his devisees became defendants.

In 1839 a verdict was found for the plaintiff subject to the opinion of the court upon a case to be stated; upon which case, when stated, the opinion of the court below was in favour of the defendants and judgment rendered accordingly. To review this opinion, the writ of error was sued out.

It was agreed at the trial of the cause, "that the court might, in deciding this case, presume from the aforesaid proceedings in Chancery, any fact which they would direct a jury to presume from said proceedings."

*R. Johnson*, for the plaintiff.
*Schley*, for the defendants.

The points made respectively were, for the plaintiff,

1. That by the will of Z. Magruder, of 26th March, 1789, Elias Magruder took a life-estate only in the land sued for, and, under the facts in the case, had no other estate to his death; and that, at his death, the land was to be sold for the benefit of the six children of the testator mentioned in the devise.

2. That this being the case, the Court of Chancery of Maryland had authority, upon the petition of four of such children, to decree a sale of the land.

3. That the court did so decree, and

4. That the sale made under the decree to Walter Slicer, under whom the lessor of the plaintiff claims, passed to Slicer the fee, which is now in the plaintiff's lessor.

For the defendants,

1. That under the devise to Elias Magruder, (in the 8th clause of the will of Zachariah Magruder,) said Elias Magruder virtually took, under the laws of Maryland, an estate in fee-simple.

2. That even if Elias Magruder, under the facts stated, took only an estate for life, yet the proceedings in Chancery were not effectual to vest in Walter Slicer (through whom the plaintiff claims) a legal title to the parcel of land sought to be recovered in this suit.

3. That even if, upon the facts stated, said Walter Slicer acquired

a legal title to said land, yet the lessor of the plaintiff, upon the whole facts, does not show that such title had become vested in him at the time of the demise.

4. That even if the lessor of the plaintiff had, at the time of the demise, a legal title to undivided parts of the tract, he could not recover at all, the demise being for an entirety.

*Johnson,* for plaintiff.

The first question is, what estate did Elias Magruder take under the will? We say, only an estate for life: the other side say that it was eithe. an estate in fee, by virtue of the rule in Shelly's case, or a fee-tail, or a fee-simple conditional at common law. It is perfectly clear that if the will had stopped at the first paragraph, the estate devised would have been only for life; the doubt is as to the second paragraph. If the contingency happened, the estate was to become a fee to the devisee; if he died without children, then it was to go to the children of the testator.

Is it enlarged by the rule in Shelly's case?

1 Rep. 93 contains the rule. It was recognised as an old one, and is, that where an estate is given for life with limitation over to heirs, it is an estate in fee, and taken by virtue of the rule. But if the contingency had happened here, the devisee wor 'd have taken under the will an estate in fee; and the distinction is in his taking under the will or under the rule. Fearne, Con. Rem. 28, note; 1 Hargrave's Law Tracts, 490; 1 Preston on Estates, 263 to 419; 4 Kent, 214.

Is it a conditional fee-simple?

The defendant is understood to place it in this class. But a conditional fee-simple at common law is an estate limited over to some particular heirs, in exclusion of heirs general. Before statute of Westminster, courts held that where the contingency happened, the estate became absolute and could be aliened; but in no other case than where heirs special are preferred to heirs general. A qualified or base fee is where a deed is made to A. and his heirs, tenants of the manor of Dale; where they hold only as long as they are tenants. The error of the other side is in not distinguishing between a fee-simple conditional at common law and an estate to arise upon condition. The difference between estates upon condition precedent and condition subsequent is, that in the former there is no estate in the party until the contingency happens, whilst in the latter there is.

Schriver's Lessee *v.* Lynn et al.

Here, the estate in fee was to arise upon the happening of a future contingency, in case Elias married and had children; otherwise he was a mere tenant for life. 2 Bla. Com. 109.

2. Was the chancery proceeding regular?

1. Did the Maryland statute give jurisdiction?

2. Was it a case of ordinary chancery jurisdiction?

The Court of Chancery is created by the constitution of the state, and invested with all chancery powers, unless restrained by law. In case of doubt, we look at the statute to see whether it takes away any of the ordinary chancery powers. The act of 1785, chap. 72, is intended to enlarge jurisdiction; its title being, "An act to enlarge the jurisdiction of the High Court of Chancery." The 4th section is applicable to this case. The executrix was dead, and the authority of the executor was revoked. No regular bill was necessary; a petition was sufficient. All that the chancellor had to be satisfied of, were two things: 1st, That the sale ought to be made, and 2d, That there was no person to make it.

2. It was a case also of ordinary chancery jurisdiction. A trust was to be executed and there was no trustee. The petition prayed for a sale, and the decree was that all directed by the will to be sold should be sold. The trustee, therefore, sold the whole.

Our title is good, if Slicer's was. He claims under the proceedings of a court of competent jurisdiction, whose decision must be presumed to be right. Elias must be presumed to have been dead, if it is necessary to sustain the authority of the court. It is objected also that it does not appear that the trustee ever gave a bond; but this court must presume that every thing was properly done. 10 Peters, 449.

It is also objected that the power to sell was in the surviving executor. This court and the Court of Appeals in Maryland have differed upon this point. 10 Peters, 533, that it survives; 4 Gill and Johnson, 323, that it does not. But the ground of the decision in Peters was, that the sale was to be made to pay debts. In this case there were no debts. The devisees cannot deny the validity of the chancery proceedings.

*Schley,* for defendant.

By the laws of Maryland (1789, chap. 45) estates of fee-tail general or fee-simple conditional are in fact fee-simple estates, because they are descendible as such, (1 Harris and Gill, 111,) and are liable

for the debts of the deceased. Elias took a fee-simple conditional. 2 Preston on Estates, 289, 295, 298, 303, 304

Elias had something more than an estate for life. 1 Brocken-borough, 131; 2 Virginia Rep. 11; 7 Harris and Johnson, 244; Fleta, lib. 3, chap. 9, page 186; Bracton, 17; 1 Reeves' History of English Law, 293; 2 Preston, 296; Plowden, 235, 250; 2 Lord Raymond, 779; Co. Litt. 18.

If Elias had issue, they would have taken by descent after his death; he must therefore have had a fee in himself. 1 Preston on Estates, 264; 2 Powel on Devises, 602; Willes, 3; 2 Gill and Johns. 458.

Suppose Elias had only an estate for life; how does Slicer get the residue? In 1805, Elias Magruder was alive, because in 1806 he sold land. The chancellor ordered the land sold free of all claims of heirs or devisees; but Elias was a devisee and living on the land. Was his land sold over his head? He had not joined in the petition, or forfeited his estate. The petition, therefore, does not include the 100 acres, but states that the 356 acres had not been sold. True, the decree covers all; but it must be limited by the petition.

The act of 1785 does not include this case, because it is confined to cases where the party neglects or refuses to act; but Elias being alive, there was no neglect to sell the 100 acres, because the time to sell had not yet come. Elias might even then be married and have children.

The power of the trustee was only that which the executor had, the proceeding being *ex parte*. Elias did not die until 1812, and the chancellor could not divest him of his rights upon a petition filed by other persons.

The bond of the trustee is a condition precedent, and he had no right to act without complying with it. The law required a bond. The case in 2 Gill and Johnson, 114, is not applicable, because no final ratification appeared there, and there was much evidence on the subject.

Suppose that Slicer had a good title, did the plaintiff obtain it? The two elder judgments were dormant for three years prior to Lamar's sale. If there is an outstanding title in Lamar, the plaintiff must fail in his ejectment; on this subject some analogous cases may be found in 12 Wheaton, 179; 4 Cond. Rep. 457, note.

In Maryland, there is no law limiting the lien of a judgment, but the judgment itself is good for twelve years. The chancellor, however, decided (2 Bland Ch. Rep. 323) that a judgment cannot lie dormant

for ever. Some illustrative cases are 2 Harris and Johnson, 66; 8 Gill and Johnson, 38; 7 Gill and Johnson, 360.

It is settled in Maryland that there must be a *scire facias* where a new party is to be charged; such party must have a day in court. 2 Harris and Johnson, 72; 10 Gill and Johnson, 373.

4. The demise is for an entirety.

Two children did not join in the petition, and the record does not show that they ever received a distributive share of the proceeds of the second sale of 100 acres. Their title is not extinguished; and whatever may be the condition of the other four children, the plaintiff, not having acquired the title of these two, cannot succeed under his present demise.

*Johnson,* in reply.

It does not appear that any of the children ever objected to the proceedings of the trustee.

As to the 356 acres, it must be admitted that there was no other mode of making a sale than under the act of 1785; and there was the same necessity as to the 100 acres. The executor had not power to sell them; here was a case, then, where property ought to be sold; and there was nobody to sell it. If the chancellor appoints a trustee, he has decided that a trust exists. This court has said that the decision of a court of competent jurisdiction must stand; and must assume that the necessary facts were proved.

The Court of Appeals in Maryland have decided (M. S. Denison and Dublin) that a proceeding under the fourth section of the act of 1785 is like a suit. One person is enough to petition; others can go in and be heard. If one were not enough to petition, the act would be of little use. The trustee was directed to "sell and convey the property," not merely the interest of the petitioners. The act was designed, for a practical purpose, to reach the estate.

Was the trustee appointed for the 100 acres also? True, the petition speaks only of 356 acres, but it refers to the will, and states it. The same children who were to receive the proceeds of the 356 acres, were, by the will, also to receive the proceeds of the 100 acres. The right to the 100 acres was prospective and contingent; but the trustee was vested with power to sell all, for the sake of convenience. It is objected that Elias was still alive; but the court may as well presume him to be dead, as that there was error in the decree. The admission in the record is, that the court may presume any fact which

they would instruct a jury to presume. If, therefore, they would instruct a jury to presume the death of Elias, it can presume it too. The trustee first reported that he had not sold the 100 acres, and afterwards reported specially that he had. The court, by ratifying this last report, have made it conclusive that they considered the trustee to have been authorized.

This party cannot object to these proceedings; if any persons could, it would be the children who did not join, but the court would not now tolerate an ejectment, if brought by them.

The bond is not necessary to give the chancellor jurisdiction, but to secure the parties; its omission is a mere irregularity, and not to be brought into view upon a collateral matter. Besides, it must be presumed to have been given. In 2 Gill and Johnson, 114, a ratification was presumed, page 130.

It is said that we do not show a title to the whole. But the two children who did not petition received their share of the proceeds, and by that act made themselves parties. They are estopped. The decree gave authority to sell the whole land, and the whole title was conveyed to us.

The Court of Appeals did say once, that a plaintiff could not recover an undivided part, claiming title to the whole. The act of 1832 corrected this. This act has been repealed in part, but not in this.

As to an outstanding title in Lamar:—

Until the chancellor said otherwise, the profession had no doubt of the propriety of the lien of an elder judgment. Before the act of 1823, execution had to be issued within a year and a day. Now three years are allowed. All judicial liens must be noticed by all. A purchaser under a junior judgment must be presumed to have notice of the first. The chancellor says that the object of requiring a prompt issue is to protect purchasers; but they are already protected by the records.

What estate did Elias take?

It is true that an estate-tail general or fee-simple conditional is, by the laws of Maryland, synonymous with a fee-simple. But a fee-simple conditional is where the limitation is to heirs special, to the exclusion of heirs general. 2 Bla. Com. 110. There is no such special limitation in this will. No estate of inheritance passed on the death of the testator. 2 Bla. Com. 151, 154, defines an estate upon condition.

If a fee passed upon the death of the testator, it was not by virtue

of the will. Rules giving a different direction to an estate from that pointed out in the will are not applied except from necessity. The devise to the children is a good executory devise, to take effect unless a contingency happened. The object of the testator was to benefit his children; but the argument of the other side would defeat that intention.

Mr. Justice McLEAN delivered the opinion of the court.

This case comes up on a writ of error to the Circuit Court for the district of Maryland. An action of ejectment was commenced by the lessor of the plaintiff, to recover the possession of 100 acres of land, part of a tract called George's Adventure, situated near the town of Cumberland. In the Circuit Court a verdict was found for the plaintiff, subject to the opinion of the court upon a cause stated. A judgment was entered for the defendant; and the cause is now before us, on the facts agreed.

By his last will and testament, Zachariah Magruder, a citizen of Maryland, among other things devised to his wife Sarah, "the full use of his dwelling-plantation, containing in the whole, after a certain legacy was deducted, about 356 acres, called George's Adventure, in Washington county; to be by her peaceably and quietly possessed and enjoyed without molestation, during her natural life."

The will also contained the following, "I give and bequeath unto my brother, Elias Magruder, during his natural life, 100 acres of land, being part of a tract of land called George's Adventure, lying and being in Washington county, and state aforesaid; to be laid off at the upper end of the tract aforesaid, so as to include the plantation on which he now lives. In case the said Elias Magruder should have heirs lawfully begotten of him in wedlock, I then give and bequeath the 100 acres of land aforesaid to him, the said Elias Magruder, his heirs and assigns, for ever; but should he, the said Elias Magruder, die without an heir so begotten, I give, bequeath, devise, and desire, that the 100 acres of land aforesaid be sold to the highest bidder, and the money arising from the sale thereof to be equally divided among my six following children, to wit: Samuel," &c. The testator having died, proof was made of his will, and letters testamentary were granted, the 3d of May, 1796, to Sarah Magruder his wife and his son Nathaniel B. Magruder, named as executrix and executor in the will.

After the decease of the testator, Elias Magruder took possession

of the 100 acres of land devised to him, and being so in possession he conveyed the tract to David Lynn, who devised the same to the present defendants.

On the 30th of December, 1805, Samuel B. Magruder and three other, brothers, sons of Zachariah Magruder, filed .their petition to the chancellor of Maryland, representing that their father after making particular dispositions of property, devised that the remaining part of his land, called George's Adventure, being about 356 acres, should be sold to the highest bidder, by and at the discretion of his executrix and executor, and the money equally divided amongst his six children, including the petitioners."

The petitioners stated that the executrix was deceased, and that Nathaniel B. Magruder, being insolvent, at the instance of his sureties, his power as executor had been revoked by the Orphan's Court. And the petitioners prayed that a trustee might be appointed "to sell all the property devised to be sold by the will, and such other and further relief," &c. The will was filed as an exhibit.

On the day of filing the petition, the chancellor decreed, "that the real estate in the said will directed to be sold shall be sold; that Roger Perry be appointed trustee, who shall give bond in $2000, conditioned for the faithful performance of the trust reposed in him by the decree, or to be reposed in him by any future decree or order in the premises, and that he shall proceed to sell," &c.

Afterwards on the 22d of May, 1806, the trustee reported that he "had sold the real estate in the said will and decree mentioned," and had made distribution, &c. At the close of his report he says, "the 100 acres, part of the said tract devised to be sold in case Elias Magruder should die without heirs, as expressed in the will, still remains unsold." The sale was ratified by the chancellor.

And afterwards, on the 9th of June, 1812, the trustee made a second report, that he "had sold the remaining part of the real estate of Zachariah Magruder, deceased, consisting of 100 acres of land," &c. This sale was also ratified by the chancellor, and a deed was executed to Walter Slicer, the purchaser. In the year 1818, a judgment was obtained against Walter Slicer, and two others in the year 1819. On one of the junior judgments execution was issued, under which the land in question was sold to Lamar. On the other junior judgment, obtained at the same term, an execution was issued, and the same tract was sold, after the above sale, to David Shriver, jr.,

the lessor of the plaintiff. He also purchased, subsequently, the same tract, under the prior judgment.

The first question for consideration arises out of the devise, in the will, to Elias Magruder. Did he take a life-estate only, or a fee-simple? That he took an estate in fee-simple conditional in the 100 acres, is urged by the defendants' counsel. And a statute of Maryland of 1786, entitled " an act to direct descents," 2 Ketty's Laws, chap. 45, which provides that lands held " in fee-simple or fee-simple conditional, or in fee-tail to the heirs of the body generally," shall descend in the same manner, is relied on as giving a fee-simple to the devisee. Under this statute, it must be admitted, whether the estate vested be technically considered a fee-tail general or a conditional fee-simple, in effect, it is a fee-simple.

In 1 Inst. 20 s. it is said that " all limitations confined to the heirs of the body, either by direct or circuitous expression, and which are not estates-tail under the statute *de donis,* remain conditional or qualified fees at the common law. A gift of land to a man and his heirs generally, if he shall have heirs of his body, without any other expression to qualify the word heirs of his body, is a conditional fee. Fleta, b. 3, c. 9, 136. And in Plow. 233, it is said, " and the Lord Dyer in his argument took exception to the ratification, for that it confesses the estate-tail in King Henry VII., and then says, that he having issue, Prince Arthur, entered and was seised in fee; whereas, he said, the having issue did not make him to have the fee, for the fee either accrued to him by the remainder or never." The same doctrine is found in page 250; Machell *v.* Clarke, 2 Lord Raym. 778. By the statute *de donis,* Westm. 2, 13 Ed. 1, a fee-simple conditional estate at common law, in certain cases, was converted into a fee-tail which, by alienation, the ancestor could not change.

The estate under consideration, it is insisted, is a conditional fee-simple; or in other words that the fee vested is liable to be defeated on the failure of heirs as provided in the will. On the other side it is argued, that the condition was a precedent one, which must happen before the fee vested. The doctrine above cited seems to favour the first of these positions, as does also the rule in Shelly's case. By that rule, " in any instrument, if a freehold be limited to the ancestor for life, and the inheritance to his heirs, either mediately or immediately, the first taker takes the whole estate." This rule had its origin in feudal times, and was, perhaps, in no small degree influenced by considerations which have long since ceased to exist.

The rule, Mr. Preston says, 1 Pres. on Estates, 369, " is of positive institution, and has this circumstance of peculiarity and variance from rules of construction." " Instead of seeking the intention of the parties and aiming at its accomplishment, it interferes in some, at least, if not in all cases, with the presumable, and in many instances, the express intention." " In its very object, the rule was levelled against the views of the parties."

That this effect has been given to the rule by some adjudications is admitted. But there is a rule of construction applicable to all instruments, and especially to wills, that is, the intention of the parties, which should control any arbitrary rule however ancient may be its origin. And of this opinion was Lord Mansfield, in Perrin *v.* Blake, 4 Burr. 2579. He says, " the rule is not a general proposition, subject to no control, where the intention is on the other side, and where objections may be answered." And he agreed, as Mr. Preston remarks, with Justices Wilmot and Aston, that " the intention is to govern, and that Shelly's case does not constitute a decisive uncontrollable rule." Mr. Justice Buller, in the case of Hodgson and wife *v.* Ambrose, Doug. 337, was of the same opinion, and also Lord Hardwicke, in Bagshew and Spencer, 2 Atk. 583. Where technical words are used in a deed of conveyance, the legal import of such words must govern. But there is no rule better established, than that in giving a construction to a will, the intention of the testator must prevail. His expressed intention constitutes the law, unless it shall conflict with some established legal principle. Under this rule the nature and extent of the estate devised to Elias Magruder must depend upon the words of the will.

In the first clause of the devise a life-estate is clearly given to him. " I give and bequeath unto my brother, Elias Magruder, during his natural life, 100 acres of land," &c. The second clause of the devise is equally explicit. " In case the said Elias Magruder should have heirs lawfully begotten of him in wedlock, I then give and bequeath the 100 acres of land aforesaid, to him, his heirs and assigns, for ever." Now the condition of having heirs as above expressed, is clearly a precedent condition and must happen before the estate vests. And if any doubt could arise from the above sentences whether the testator intended to vest in Elias more than a life-estate, that doubt must be dispelled by the succeeding sentence, " but, should he, the said Elias Magruder, die without an heir so begotten, I give, bequeath, devise, and desire that the 100 acres of land, aforesaid, be sold to

the highest bidder, and the money arising from the sale thereof, to be equally divided among my six children."

It would be difficult to convey in more explicit language, than is done in the above sentences, the intention of the testator. He gives a life-estate; and then, on the happening of the contingency named, he gives an estate to the devisee and his heirs in fee-simple; but, should the contingency not happen, he directs the land to be sold and the proceeds distributed among his children. No other conclusion can be arrived at, on this view of the will, than that Elias Magruder took only a life-estate in the land. His conveyance, therefore, could transfer no interest in the land, beyond his own life.

The next question regards the title under the proceedings before the chancellor.

These proceedings were by virtue of " an act of 1785, for enlarging the power of the High Court of Chancery." 1 Maxcy's Laws, ch. 72, sect. 4, which provides, " that if any person hath died or shall die, leaving real or personal estate to be sold for the payment of debts, or other purposes, and shall not, by will or other instrument in writing, appoint a person or persons to sell or convey the same property, or if the person or persons appointed for the purpose aforesaid shall neglect or refuse to execute such trust, or if such person or persons, or any of them, shall die before the execution of such trust, so that the sale cannot be made for the purposes intended, in every such case the chancellor shall have full power and authority, upon application or petition from any person or persons interested in the sale of such property, to appoint such trustee or trustees for the purpose of selling and conveying such property, and applying the money arising from the sale to the purposes intended, as the chancellor shall in his discretion think proper."

An objection is made to these proceedings, *in limine*, on the ground that only a part of the heirs interested, united in the application to the chancellor. But this objection is not sustainable. The petition was for the benefit of all the heirs, and the statute does not require that all shall unite in the petition. " Any person or persons interested" may apply to the chancellor. Whether applicants or not, all the heirs equally participated in the results of the proceedings, and this is a sufficient answer to any technical objection.

But the main point under this head is, whether the sale of the 100 acres now in controversy was of any validity.

That the proceedings before the chancellor constituted a suit is

admitted; and also that they are conformably, at least in part, to the mode of procedure in such cases. The chancellor had jurisdiction of the cause, as presented by the petition; and this being the case, no advantage can be taken of errors, however gross, when the record is used collaterally. If a want of jurisdiction appear on the face of the record, the judgment or decree will be treated as a nullity. But where there was jurisdiction, the record must be received as conclusive of the rights adjudicated. No fact established by the judgment of the court can be controverted. In the language of this court, in the case of Voorhees *v.* The Bank of the United States, 10 Peters, 450, the record imports absolute verity. But when a judgment or decree is given in evidence, its nature and effect can only be ascertained by an examination of the record. Let this test be applied to the proceedings of the chancery court under consideration.

It is admitted, and the fact appears from the record, that at the time these proceedings were instituted, Elias Magruder was living and continued to live for seven years afterwards. And as he had a life estate in the premises in controversy, and the contingency on which the estate was to vest in his heirs, being possible, during his life, the land was not subject to sale under the will. It could only be sold on the devisee's failure to have heirs, which could not occur before his decease.

The petition asks an order to sell the remaining part of the tract called George's Adventure, a part of it having been devised, containing about 356 acres. The sale of the 100 acres, now in contest, was not asked and indeed could not be, as the tract at that time was not liable to be sold. The decree ordered, "that the real estate in the said will directed to be sold should be sold." Now this decree could only apply to the 356 acres named in the petition, for the reason that the sale of that tract only was prayed for, and it was the only tract, at that time, which the will authorized to be sold. In the language of the decree, it was the real estate directed by the will to be sold.

To construe the decree as embracing the 100 acres tract, would go beyond the prayer of the petition and the jurisdiction of the court. One of the trustees named in the will was deceased, and the other, being insolvent, had been removed by the Orphan's Court. The substitution of a new trustee gave to him no power beyond the special order of the court. Under the statute it seems not to have

been the practice of the court to appoint a trustee generally, to carry into effect the will: but to point out, by a specific decree, what he shall do and the mode of doing it. His duties being limited by the decree, he is made the instrument of the court, having no discretion or power under the will. Consequently, in his decree the chancellor required the trustee to give security, and directed him what notice should be given, and in what manner the sale should be made. This mode of executing the act was clearly within the discretion of the chancellor, specially given to him in the close of the above section. The rule was made and ratified by the chancellor. A deed was executed by the trustee to the purchaser, and nothing further was done until in June, 1812, when the trustee made a second report, that in pursuance of the above decree, after giving public notice, " he had sold to Walter Slicer, the remaining part of the real estate of Zachariah Magruder, deceased, consisting of the 100 acres devised to Elias Magruder."

Now it is clear that this sale was not made in pursuance of the decree. Neither in the petition nor in the decree was the tract of 100 acres named or referred to. This proceeding then, by the trustee, was without authority. It could derive no sanction from the decree. From the record, it would seem that there had been no continuance of the cause for six years, and no step taken in it. The second report is then made by the trustee as stated. This report was ratified and confirmed "unless by a given day cause to the contrary should be shown," of which public notice was given. No cause being shown, there was a final ratification of the sale on the 22d of February, 1813. A the time of this sale it is admitted that Elias Magruder was deceased, without heirs, in the language of the will, "lawfully begotten of him in wedlock." And here a question arises whether the above sale can be treated as a nullity.

That the trustee was not authorized to sell by the decree has already been shown. It would seem, however, from the form of his report, that he assumed to act only in virtue of the decree.

Does the ratification of the sale bring it within the rule, which applies to a case where the court has jurisdiction, but has committed errors in its proceedings. Had the court jurisdiction of the tract of land in controversy. At the time the decree was entered, that tract was no more subject to the power of the court than every other tract in the county. The devisee was in possession, having a life-estate in it subject to become a fee-simple on his having heirs lawfully

begotten by him. He had no notice of the proceeding, and was in no sense a party to it. The petition did not pray for the sale of this land. In fact that proceeding can, in no point of view, be considered as authorizing the sale by the trustee. The validity of the sale then must rest upon the fact of its having been made by the trustee, and sanctioned by the chancellor. There would seem to be no ground for doubt on this point.

The chancellor is authorized to proceed in a summary mode, under the statute, for the sale of land, in the predicament of the above tract, after the decease of the devisee, without heirs. But he can only proceed on the application of persons interested. Here was no such application for the sale of this land. The sale being without authority, the ratification of it by the court must be considered as having been given inadvertently. If given deliberately and on a full examination of all the facts, still it must be regarded as an unauthorized proceeding. There was no case before the court—nothing on which its judgment could rest.

No court, however great may be its dignity, can arrogate to itself the power of disposing of real estate without the forms of law. It must obtain jurisdiction of the thing in a legal mode. A decree without notice, would be treated as a nullity. And so must a sale of land be treated, which has been made without an order or decree of the court, though it may have ratified the sale. The statute under which the proceeding was had requires a decree; at least such has been its uniform construction.

This view being decisive of the title of the lessor of the plaintiff, it is not necessary to consider the other questions in the case.

The judgment of the Circuit Court is affirmed.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the district of Maryland, and was argued by counsel. On consideration whereof, It is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed with costs.