After making the foregoing statement, Mr. Chief Justice Bingham delivered the opinion of the Court:
The questions for decision in this case are, first, the claims of complainants that the court had no jurisdiction to make the decree of September 20, 1876, directing the sale, and that consequently all of the subsequent orders of the court, together with all the transactions of Wheeler, trustee, were null and void and not binding upon the complainants, and that this is true, whether the purchasers had notice or not; second, that if the court had jurisdiction, the acts of Woodbury Wheeler in and about this sale were fraudulent, and his appointment as trustee was procured by misrepresention of the facts, and for the purpose of cheating the complainants for his own advantage and benefit.
In order to determine the first question, it will be necessary to examine the will. By reference to it, we find there 'is an absolute devise of one hundred and ninety odd acres of the property claimed by the complainants by the testatrix to her four children, and then'follows this language: “I hereby direct that the said property be sold by my executor, with the consent of John P. Waring to the deed of sale, by his signature, for which he, in consideration thereof, shall receive out of the proceeds of sale of said land one-third, and the residue to be invested by my executor for the benefit of my four children, share and share alike.”
It is claimed by the complainants that this is simply a naked power to sell with the consent of Waring; that the *419 executor,, who was to make the sale had no interest, and that the power to sell ceased with the death of Waring, who was to authorize the sale; hence no power to sell survived the death of Marshall, the executor, and Waring. If this be true, then the court would not have had jurisdiction to order the sale of the property. y There being no trust, there would be no reason for the appointment of a trustee, and nothing could be done except by the parties named as devisees in the will. But is it true? We think that the language, “and I hereby direct that the said property be sold by my executor,” is in the nature of a positive provision for the absolute sale of the property, and that the provision that the residue of the proceeds, after compensating Waring for his signature, shall be invested in real estate for the benefit of his four children, creates a trust, and consequently the assumption of the complainants is unwarranted. This will has an absolute direction to sell the property under any and all circumstances, and a trust is created with reference to the proceeds. In each case the power survives the death of the executor. An absolute direction to sell without any qualification by itself, under ordinary circumstances, creates a trust, if it be not contingent or optional, depending upon the judgment or consent of some third person. Under any circumstances, when a trust is created and a person named to execute it, upon the death of the trustee without executing the trust, the trust survives and a trustee will be appointed by a court of equity to execute it.
It is said that John P. Waring was to consent to the sale, and that the right to sell was contingent upon his executing such consent, and hence his death revoked the power given by the will to sell.
We think it was the intent and purpose on the part of the executrix, first, to give this property to her children, and next to provide that this property should be sold ■by her executor, with the consent of John P. Waring to the *420 deed of sale, for which he, in consideration thereof,-should receive out of the proceeds one-third, and the residue in that event was to be invested by the executor for the benefit of the fohr children of Sarah Ann Marshall, but that the sale should take place at all events, even if he should not consent. A court of equity would have the power to compel. his consent, there being a trust created by the will, and the court would compel the-execution of the consent or approval of the party invested with the power of consenting or approving the sale. This position is strengthened by the concluding- clause of this section of the will, “ and my executor is hereby granted full power to convey said land in fee simple for the purposes herein set forth.” He is directed to sell with full power to convey. This may have been a provision by the testatrix for securing to Waring a portion of the proceeds of the sale; it may have been for the purpose simply of divesting the property of any claim of Waring, who was the father of the testatrix, who inherited this land from her mother, so that the price might not be diminished by any outstanding encumbrances. We think the court had jurisdiction to entertain a bill to sell the property under the circumstances. In 1876, when the bill in equity suit 5029 was filed, Waring was dead, and Marshall, who was named as executor in the will, refused to act as such, but filed the bill as the next friend of Jiis young children, the children of the testatrix, and sought a sale of the property. In his bill he states that the lands were encumbered with taxes, and that it was essential and' necessary for the best interests of the children that the lands, which were unproductive, should be sold and the proceeds, after discharging the liens then existing upon the estate, be re-invested. There was ample authority for this proceeding in the Act of Maryland of 1785, for enlarging the power of the High Court of Chancery. Counsel for the complainants in their brief refer to this act, citing several sections and claim that there is no provision in the act which would authorize the filing of such *421 a bill as was filed in equity cause 5029. The fourth section rof that act, which counsel omit to refer to, we think gives ample power to file such a bill. It is as follows:
“ That if any person hath died, or shall die, leaving real or personal estate to be sold for the payment of debts, or other purposes, and shall not, by will or other instrument in writing,; appoint a person or persons to sell or convey the same property, or if the person or persons appointed for the purpose aforesaid shall neglect or refuse to execute such trust, or if such person or persons, or any of them, shall die before the execution of such trust, so that the sale cannot be made for the purposes intended, in every such case the chancellor shall have full power and authority, upon application or petition from any person or persons interested in the sale of such property, to appoint such trustee or trustees for the purpose of selling and conveying such property, and applying the money arising from the sale to the purposes intended, as the chancellor shall, in his discretion, think proper.”
This is broad and comprehensive, and gives full power not only to sell under the provisions of the will, but to sell the property to pay debts, encumbrances and taxes, the sale in fact having been made more for the purpose of paying debts, encumbrances and taxes, than of re-investment. We have then reached the point where the court had jurisdiction to entertain the bill and to enter the decree of September 22, 1876. This being true, we think it follows that the court had power to enter all the subsequent orders, which it did with reference to the land embraced in the will, and unless there was fraud perpetrated in some way, the sales to these various parties would be valid, and the objection to their present titles, because of the fact that the court had not jurisdiction to order the sale,, can not obtain.
It should be noticed that it is claimed by complainants that in equity suit 5029, the court did not obtain jurisdiction of the infants, as no citation was issued and. served upon *422 them, and they never appeared in court. The entry in that case shows that they did appear in court and that a guardian was appointed for them while they were in court. This was disputed, and the testimony of these complainants, one of whom was five and a half years’ old at the time of that entry and the other seven years, is that they do not recollect that they were brought into court at that time, and are very positive that they were not in the court-house for ten years after that. We think it would be very unsafe to set aside a solemn recital of a court in' a record properly made in a case on oral evidence. Waiving the question as to whether it is competent to do that in a matter relating to jurisdiction, we think that the evidence is entirely insufficient to overcome the record, and 'we think, furthermore, that this suit was instituted for these infants for their benefit, and to carry out an express provision of the will, as we construe it; and, therefore, if there had not been any service, or they had not been personally present in the court at all, the proceeding is, notwithstanding, a valid one. We think as to the 75 acres which was not embraced in the will, which did not descend from these children to their mother, but descended from their father at his death, the court had not jurisdiction. No allusion is made to this land in the original bill, 5029. Indeed, none could be, because the complainant in that proceeding as next friend was then the owner of this tract. In the year 1884 Woodbury Wheeler represented to the court that this latter tract of land belonged to the estate of the husband of testatrix; that the main portion of this particular estate was in Maryland, and that it was omitted when that estate was sold in Maryland; that it could not be sold there, because it was beyond the jurisdiction of Maryland courts, and asked for direction and authority to sell this 75 acres, as he termed it. A sale was authorized by the court and a report made to the court of a sale to McEuen at $20 per acre.
We think it is unnecessary to examine, as to the correct *423 ness of this proceeding, for the reason that it seems clear that there was no authority whatever on the part of the court to order the sale of this seventy-five acre tract, because it was not in the original petition, and the court had acquired no jurisdiction over it, and there was nothing done afterwards which could by implication give jurisdiction. It was probably supposed that because Wheeler had become the guardian of the children that he might proceed to sell under the guardian’s act, for the benefit of the children, in compliance with the statute. He could not do that because the steps taken were- not in conformity with the guardian’s statute. There is no direction on -the part of the testatrix to sell, and, therefore, the court did not acquire jurisdiction under section 4 of the Act of Maryland of 1785. As to this 75 acre tract, we find that there was no jurisdiction acquired by the court to make any order or to ratify any sale or give any validity to any sale that Wheeler made, and as to the same all orders, decrees and conveyances set forth in the pleadings in this case will be set aside and held as null and void.
Was there any fraud practiced in the case as presented to us? Upon the charges of fraud, taking into account the answer of the several defendants and the testimony, was there any such fraud perpetrated as would invalidate the sales made by Wheeler? We have thoroughly examined the testimony relating to the charges of fraud, and we do not find that it is established. It is said that there is a disparity between the price paid and the.value of the land. The court should be well satisfied that there was a decided difference between the actual válue of the property and the price for which it was sold before inferring fraud. There is no testimony upon ■which we can rely of that character in this case. It is said that McEuen, by his answer, admits that he paid $25 per acre for the seventy-five acre tract and $30 per acre for the eighty acre tract, which was embraced in the will, and of which we hold that the' court had jurisdiction to order a sale. Admissions as to the seventy-five *424 acre tract are unimportant, as we are of opinion that the court had no j urisdiction and that sale is invalid. McEuen’s admission, however is not in the nature of testimony, except as against himself. The bill does not call for an answer under oath, and it-is not under oath, and is not, therefore, testimony as between Wheeler and the complainants, nor could it be considered for the purpose of proving that Wheeler practiced fraud.
Wheeler, in his answer, refers to the record, and states that this land was sold at the price mentioned in the orders and proceedings in court, and by reference to the record we find that the eighty acre tract was sold for a specified sum per acre, and the representation to procure the order to sell was that it was encumbered with a mortgage or a deed of trust which had been executed theretofore by Wheeler for the purpose of securing four thousand dollars, which • had been borrowed about the time of the sale to Griffith of the hundred and ten acres, and this deed of trust of the hundred and eighty acres was executed for the purpose of clearing the premises of encumbrances and not for any other purpose. So far as it appears from the examination of the record, that was the express purpose it was sold for, and the court expressly required the purchaser to assume the encumbrance and pay all taxes due. This seems to dispose of every circumstance tending to establish fraudulent conduct on the part of Wheeler. Whether Wheeler has accounted for the proceeds of these sales or not, or whether he has appropriated them to the benefit of the children, how much- he has j>aid out for taxes, and all that, is a matter for examination and accounting with the complainants, to do which Wheeler advises the court he is anxious and ready at any time when directed by the court. The misappropriation of the proceeds of the sales would not be a matter that would invalidate the sales, unless some previous plan to swindle the infants be proved and shown to have been been participated in by the purchasers or that they had notice of the *425 fraud prior to their purchase. As we have seen, the evidence does not make such a case. Schriver’s Lessee vs. Lynne, 2 How., 59.
The decree will be that as to the one hundred and ninety acre tract mentioned in the will, there was jurisdiction to make the two sales, one to Griffith of one hundred and ten acres, and the other to McEuen of eighty acres; that these were valid sales, .and that there is no fraud shown such as would authorize us to invalidate the sales. As to the seventy-five acres, or a hundred and one acres, whichever it may be designated, the court had not jurisdiction, and all the orders and conveyances are invalid and are declared null and void.