## In re AMERICAN HOME FURNISHERS' CORPORATION.

### ROSS et al. v. WILLCOX et al.

(Circuit Court of Appeals, Fourth Circuit. February 19, 1924.)

#### No. 2218.

1. Judges ⬅30—Judge has no power to try cases outside district.

   The general rule is that a judge has no power to try cases, either in law or in equity, outside his own district.

2. Judges ⬅27—Interlocutory orders in chambers within judge's power, but not trial on merits.

   A judge at chambers has the authority and power to make all interlocutory orders and to do everything that is necessary to speed the cause and promote justice to the parties, except the actual trial on the merits.

3. Courts ⬅255, 256—Statutes liberally construed in support of action of judge.

   The federal courts must find their jurisdiction in express provisions of federal statutes, but in passing on the legality of the method of exercising the jurisdiction plainly conferred the statutes should be liberally construed in support of every action of the judge looking to the prevention of delay and the promotion of justice.

4. Judges ⬅30—District Judge in another district has power to hear matters that he could hear at chambers in his own district and may give order for sale of bankrupt's property.

   While a District Judge is holding court in another district under statutory authority, he has the power in his discretion to hear all matters that he could hear in his own district, and an order so made for the sale of the assets of a bankrupt was valid under Judicial Code, §§ 9, 13, 14 (Comp. St. §§ 976, 980, 981), and Bankruptcy Act, § 2 (Comp. St. § 9586), unless there was an abuse of power.

Petition to Superintend and Revise Proceedings of the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Bankruptcy.

In the matter of the estate of the American Home Furnishers' Corporation, bankrupt. On petition by Arthur L. Ross and another against Thomas H. Willcox and others, to superintend and revise, in matter of law, an order of the District Court. Reversed.

See, also 296 Fed. 610.

William Leigh Williams, of Norfolk, Va., and Joseph C. France, of Baltimore, Md. (Harry K. Wolcott, of Norfolk, Va., R. Randolph Hicks, Huger W. Jervey, Arthur Leonard Ross, J. Frank McDavitt, Benjamin M. Kaye, and Jacob Scholer, all of New York City, on the brief), for petitioners.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. H. Rumble, of Norfolk, Va., and S. D. Timberlake, Jr., of Staun-  
ton, Va. (Frank C. Miller and Paul W. Kear, both of Norfolk, Va.,  
on the brief), for respondents.

Before WOODS and ROSE, Circuit Judges, and WATKINS, District Judge.

WOODS, Circuit Judge. In the bankruptcy of the American Home  
Furnishers' Corporation the District Judge made an order on January  
12, 1924, for the sale of the property. The order provided for advertisement by the trustees for sealed bids to be filed with the referee  
in bankrptcy on or before noon of January 21, 1924, and for a deposit  
of 5 per cent. of the bid. It also provided:

"In the event the referee on January 21, 1924, shall be of opinion, after ascertaining the sense of the creditors present and voting at the creditors' meeting to be held on said date, that it is unwise and not to the best interest of creditors to accept any bid tendered on said date, he shall forthwith, by proper order, direct the trustees heretofore named in this proceeding, to immediately advertise all the assets of the bankrupt (except cash) for sale at public auction for cash on Saturday, January 26, 1924, at 12 m., * * * at which time said property will be offered for sale first in separate units, * * * and also all the real estate of the bankrupt wherever situated, which shall be offered in separate parcels wherever they may be, may be sold free of liens; and in any case in which the title to any real estate is outstanding, the trustees will assume the obligation of obtaining the legal title to same and convey it to the purchaser."

Of the bids received and opened by the referee at an adjourned  
meeting of creditors on January 21, it was found that the two highest  
were made by Arthur L. Ross, attorney, and Sidney Bieber. These  
bids differed somewhat in terms, but upon analysis it turned out that  
the Ross bid was larger by about $47,000. After discussion by the  
creditors, Bieber proposed that if all the bids were rejected, he would  
deposit with the trustees not later than January 22, 1924, $100,000, to  
be forfeited unless he should bid for the property $1,000 in excess of  
the bid of Ross. A majority in number of the creditors present were  
in favor of rejecting and a majority in interest were in favor of accepting the bid of Ross. On the faith of Bieber's offer, the referee  
ordered a sale of the property at auction, after due advertisement as  
allowed by the court's order of January 12. At this meeting on January 21, verbal notice was given of dissatisfaction with this order  
of the referee, and of intended application to the District Judge to reverse it and direct acceptance of the bid of Ross. On January 22,  
Ross, as the highest bidder and also as the representative of some of  
the creditors, filed his petition with the District Judge, asking a reversal of the order of the referee rejecting his bid and ordering a sale  
at public auction. The petition to review and reverse the order of the  
referee was presented to Judge Groner, then holding court at Parkersburg, W. Va., by designation under sections 13 and 14 of the Judicial  
Code (Comp. St. §§ 980, 981). There were present at the hearing Mr.  
Lankford and Mr. Hicks, representing Ross; Mr. Kear, attorney for  
Bieber; and Mr. Miller for a number of creditors. Argument was  
presented to the District Judge for and against the acceptance of the

bid of Ross. No objection was made to the jurisdiction or power of the judge to hear the matter outside the Eastern district of Virginia. Immediately on conclusion of the argument, on January 23, the District Judge at Parkersburg made an order adjudging that—

The bid of Ross be accepted and confirmed, and that the trustees be directed upon payment of the bid to turn over all the assets of the bankrupt to him, "unless the said Sidney Bieber shall on or before 2 o'clock p. m. on Friday, January 25, 1924, deposit with the said R. T. Thorp, referee in bankruptcy, in the city of Norfolk, Virginia, an additional sum of $100,000, in cash, or by certified check, which, together with the $100,000 already deposited by him, will make a total of $200,000, and further agrees in writing with the said referee to start the bidding at the auction sale now advertised to be held on January 26, 1924, at 12 o'clock noon, in the city of Norfolk, Va., at the figure of $1,387,000, plus the sum of $25,000, and plus in addition thereto a sum equal to such amount as may have been expended in the aggregate by the receivers or trustees in bankruptcy herein, out of funds which should have been turned over to Wayhab and Walcott, trustees—this last sum to be fixed and certified to by a certificate of Wayhab, the auditor of the bankrupt corporation."

There were other conditions not involved here. Thereafter the referee certified that Bieber had not deposited the $100,000 as provided by this order, and that his attorney had stated to him that the deposit would not be made. On January 26, one day after the failure of Bieber to make the deposit, the trustees, under the terms of Judge Groner's order, executed a bill of sale to Ross and received from him the amount of his bid. On January 28, Harry Coplan, a creditor, and R. H. Clemmer and H. C. Miller, attorneys in fact for creditors, and Sidney Bieber, the unsuccessful bidder, filed petitions in the District Court asking Judge Groner to declare null and void his order made at Parkersburg, and to order a sale at public auction of the property of the bankrupt. Upon hearing this petition, the District Judge held that his order above recited made in Parkersburg on the 23d of January was null and void for the reason that he was without jurisdiction to hear the petition outside the Eastern District of Virginia, and ordered a resale of the property.

The petition to this court alleges that the District Judge erred: First, in not holding that he had power to make the order of January 23, 1924, in Parkersburg; and, second, in not making a similar order after his return to the Eastern district of Virginia.

[1, 2] The chief question here is whether the District Judge had the power at chambers in Parkersburg, where he was holding court under a special assignment provided by the Judicial Code, to entertain a petition to review the action of the referee in bankruptcy in ordering a sale of the property. The general rule is that a judge has no power to try cases, either in law or in equity, outside his own district. There is at least on implication in the federal Constitution and statutes that a party cannot be required to try his cause outside the territorial jurisdiction of the court in which it is pending. The judge, however, has at chambers the authority and power to make all interlocutory orders and to do everything that is necessary to speed the cause and promote justice to the parties, except the actual trial on the merits.

Even if this case were in a court of equity, instead of bankruptcy, the District Judge could have granted the order at his chambers anywhere in the Eastern District of Virginia. The Judicial Code, § 9 (R. S. § 574 [Comp. St. § 976]), provides:

"The District Courts, as courts of admiralty and as courts of equity, shall be deemed always open for the purpose of filing any pleading, of issuing and returning mesne and final process, and of making and directing all interlocutory motions, orders, rules, and other proceedings preparatory to the hearing, upon their merits, of all causes pending therein. Any District Judge may, upon reasonable notice to the parties, make, direct, and award, at chambers or in the clerk's office, and in vacation as well as in term, all such process, commissions, orders, rules, and other proceedings, whenever the same are not grantable of course, according to the rules and practice of the court."

The same provisions are made in the first equity rule.

The bankruptcy court is open at all times, and section 2 of the Bankruptcy Act (Comp. St. § 9586) invests the District Courts "with such jurisdiction at law and in equity as well enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers and during their respective terms."

[3, 4] The federal courts, it is true, must find their jurisdiction in express provisions of federal statutes; but in passing on the legality of the method of exercising the jurisdiction plainly conferred, the statutes should be liberally construed in support of every action of the judge looking to the prevention of delay and the promotion of justice. Sections 13 and 14 of the Judicial Code invest a District Judge designated to hold court in another district with full judicial power in that district, but there is nothing in the statutes which gives the least intimation of an intention to take away or suspend any power with which he was invested relating to the business of his own district. No provision is made for another judge, while he is absent, to act in his district in making orders and decrees in bankruptcy matters and to perform other judicial duties. Nothing short of the clearest expression of legislative intention would justify the holding that the Congress intended to put in abeyance the exercise in any district of judicial power at chambers necessary to the promotion of justice because its judge was holding court in another district. We are of the opinion, therefore, that while a District Judge is holding court in another district under statutory authority, he has the power, in his discretion, to hear all matters that he could hear at chambers if he were in his own district; and that the order made by Judge Groner at Parkersburg was valid.

It is true this power might be so abused by the district judge that his action would be reviewed and reversed by this court. To illustrate, if the District Judge were holding court in another district and should abuse his power by requiring attendance upon him of a large number of attorneys or parties from a distance at great expense and inconvenience when by reasonable effort the matter could be heard in his own district, the appellate court would have no hesitation in reversing his action.

In the case now before us the emergency was great that the matter should be determined promptly. A bid of about $1,000,000 was hang-

ing in the balance, with the right of the bidder to withdraw at any time. There was no certainty of obtaining a higher bid. The interests of creditors with large claims were deeply involved. Delay might cause great loss. All the parties who are now asking that the order of Judge Groner be set aside had notice that the application for the order would be made. All who desired to attend, did so. Indeed, we think Judge Groner was right in his understanding that all the parties now seeking to have the Parkersburg order annulled were actually represented. The parties had all the rights they would have had had Judge Groner been sitting in Norfolk.

The authorities accord with our conclusion. In the case of In re Tampa Railroad Co., 168 U. S. 583, 18 Sup. Ct. 177, 42 L. Ed. 589, an order of injunction was made by the Circuit Judge when he was outside of his circuit, not in the performance of any judicial duty. Even in that case the court said:

"The application for leave to file this petition must, therefore, be denied; but we must not be understood as intimating an opinion that a Circuit Judge has power to grant injunctions, appoint receivers or enter orders or decrees, in invitum, outside of his circuit."

It is a fair inference from this language that, where there is no objection, the District Judge may sign any order, even when he is outside his district on his vacation. In Ex parte Steele (D. C.) 162 Fed. 694, it was held that a judge presiding over two judicial districts, while in one district, could sign orders relating to the causes pending in the other district. The case of Hollon Parker, 131 U. S. 221, 9 Sup. Ct. 708, 33 L. Ed. 123, seems to us conclusive of the matter. There it is said:

"When the law allowed the proceeding to be taken at the chambers of the judge of the court, it meant at the chambers where he can conveniently attend to business relating to cases in this district, not that they must necessarily be within the territorial limits of his district. As one of the judges of the territory, it is a part of his duty to sit in the Supreme Court. He is one of its members, and his chambers, whilst the Supreme Court is in session, and he is in attendance upon it, may be at the place where that court is sitting. Otherwise, the right of appeal within the six months allowed by law would be abridged for the period for which notice is to be given."

As in that case a judge of the territory was under the duty of sitting in the Supreme Court, and his chambers were regarded at the place where the Supreme Court was sitting, so in this case, since it was the duty of Judge Groner, as a judge of the Eastern district of Virginia, to hold court in the Northern district of West Virginia, for the purposes of carrying on his judicial business in the Eastern district of Virginia his chambers must be regarded in Parkersburg, where he was holding court. It was so held by the Circuit Court of Appeals of the Fifth Circuit in Wheeler v. Taft, 261 Fed. 978, where the question was whether the District Judge could grant a writ of error outside the territorial limits of the district in which the case arose. The District Judge erred in holding that he had no jurisdiction at Parkersburg to make the order of January 23, 1924. Apgar v. United States, 255 Fed. 16, 166 C. C. A. 344.

296 F.—39

The District Judge no doubt refused to make an order on his return to his own district in the same terms as that made at Parkersburg, because of doubt of his power to affirm a sale already attempted without authority. Minnesota Co. v. St. Paul Co., 2 Wall. 609, 641, 17 L. Ed. 886; David Shriver Junior's Lessee v. Mary Lynn et al., 2 How. 43, 11 L. Ed. 172. The authority to make the sale to Ross depended on the order made at Parkersburg held by the District Judge to be void.

Reversed.