*56 The Chief Justice delivered the opinion of the court as-follows :
In the examination of this case we are first to enquire whether Sarah Robeson, the pauper, was ever legally settled in the township of East Windsor?
At the age of eight or nine years she removed from the township of Upper Freehold, in the county of Monmouth,, where, as she was informed, she had been born, to Hightstown, in the township of East Windsor, and went to live there with Christopher Hoagland. She continued to live with him, and do the ordinary work about the house until he died, which occurred when she was about thirteen years-of age. Without control from his family, she afterwards worked about at her pleasure. From her statement of her age at the time of her examination, it appears she was born in the year 1745. She therefore went to live with Hoagland in 1753 or 1754, and his death was in 1758. During the intervening period, the act of assembly of 1740 prescribed the terms of settlement, and by that act to live one-full year at one time, in one house or family, gave a settlement. Under its operation she lived one full year at onetime in one family in the township of East Windsor. Such a mode of acquiring a settlement, may, at the present day, and under the much more rigid provisions of the act of 1774, seem so extremely easy and liberal as almost to excite a doubt whether the words of the act, literally understood, indicate precisely the intention of the legislature. But the *44] language is very *clear and explicit, and the circum•stances of the country at that day, doubtless rendered it. politic for the legislature to give great facility to the acquisition of settlements. We are, however, relieved from difficulty by the case of Woodbridye v. Amboy, Coxe 213, decided in this court more than thirty years ago. Patience Longworthy, the pauper, when quite young, came into the township of Woodbridge as one of the family of Richard *57 Carman, who removed to that place from Long Island, an she lived in that township several years, in the family o Carman. The court said she came within the express words of the act of 1740, and adjudged that she had acquired settlement in Woodbridge.
Erom the clear and unequivocal terms of the act, and from this case so strikingly similar in its circumstances t the present, it most manifestly appears that Sarah Robeson, the pauper, did obtain a legal settlement in East Windsor.
It remains to enquire whether a subsequent settlement was acquired in Montgomery.
In the year 1779 or 1780, the pauper was married by a justice of the peace to John Robeson, who had, as is agreed by the counsel of both parties, a legal settlement in the township of Montgomery. This marriage, it is said, wa illegal and void, because Robeson had been previously married and his wife was then living. To establish these facts, became by the prima facie evidence of the marriage to Robeson, the duty of the township of Montgomery, and they relied in the sessions on the evidence of Ann Jack. She testified that she was the daughter of Robeson ; that he was an Irishman, and came to America in 1774 or 1775, when she was from five to seven years of age; that her mother remained at Glencarn, in Ireland, whore both her father and mother were born and bred, and where her mother died in the year 1817 ; that she came to this country in 1784, after, as it may deserve to be noticed, the marriage of the pauper with Robeson, and used to hear every year from her mother, from whom she had a letter in 1817. She further testified that the said John Robeson did cohabit and live with her mother at Glencarn as lawful husband and wife ; that they were esteemed, reputed and believed, by their neighbors, acquaintances, relations and friends, as lawful husband and wife, and as such visited and received by them ; that her father and mother did always and upon all occasions, acknowledge and declare each other to be lawful man *58 *45] and wife ; that they lived happily together and *rnust have lived eight or nine years together before her father left Ireland.
If this evidence of Ann Jack were admissible and true, the prior marriage of Robeson is established, and the settlement of the pauper in Montgomery is repelled.
Upon the competency of cohabitation and reputation, as evidence of marriage in a settlement case, the opinion of this court was fully expressed in the case of Westfield v. Warren, 3 Halst. 249. We denied, on the one hand, the competency of mere hearsay; and on the - other, expressly stated and recognized the well established admissibility of facts and circumstances, among which are cohabitation and reputation, in proof of marriage.
This point was not indeed drawn in question by the counsel of East Windsor. The purpose of their argument was to demonstrate and to convince us that Ann Jack was not credible. They insisted she was too young to have a knowledge of the facts of which she undertook to testify, and labored under a strong bias from her own situation, as the daughter of Robeson and his alleged former wife.
It is, however, a conclusive answer to the objections raised on this head, that with the sessions and not with this court rests the question of credibility. This court, on certiorari, in-a settlement case, has no jurisdiction or authority to enquire 'into or weigh the credibility of a witness examined in the sessions. In support of this position, it might suffice to refer to the general and well known doctrine applicable to this writ, but a reference to cases may be perhaps more satisfactory. In the case of Rex v. Preston, Burr. sett. cases 77, Lord Hardwicke said, “ The observation made by the counsel for supporting the orders ‘ that the justices at sessions are judges of fact as well as law; that they are jury as well as judges, and that it is in their breast only whether to believe or disbelieve the evidence,’ is very material.” Probyn, Justice, said, “The proceedings *59 of the justices are in a summary way. They are judges of the credibility of the evidence.” “ We can only judge upon the law admitting the fact te be one way or the other.” "'‘These summary jurisdictions are given to gentlemen of the neighborhood, who arc supposed capable of knowing the facts and the credibility of the witnesses. Their determination is certainly final as to facts.” In 'the case of Rex v. Tedford, Burr. sett, cases 60, Lord Hardwicke said, “ The justices are judges of the fact; we aro judges of the law' upon the facts, * though not of the facts themselves.” [*46 And by Probyn, Justice, “The justices were judges of the facts that appeared before them, of which we cannot enquire or determine so as to take it out of their hands into our own.” And in the case of Rex v. Haughton, 1 Strange 83, the court said, “We cannot judge of the fact, but the law upon the fact.”
In the case before us, the sessions of Somerset having disallowed the alleged settlement in .Montgomery, have sustained the credibility of Ann Jack; for we are not at liberty to suppose they disbelieved and rejected her evidence in this respect, and reposed on the conversations with her father and the pauper.
The competency of the evidence then being established, and the question of credibility being fixed as it respects the case before us by the decision of the sessions, it follows that the settlement in Montgomery is not sustained.
The settlement in East Windsor remains unchanged, and the order of the sessions and of the justices should be affirmed.