The Executors of David I. Anderson, deceased,

*v.*

John D. Anderson and others.

1. Where two powers are conferred in the same sentence, and by the same words, and the subject or property on which they are to operate is described by the same words exactly, they must be held to embrace the same subject matter.

2. Where a power is expressly given to executors over one portion of the estate, and is not expressly given over another portion, the omission manifests an intention that the power shall not be exercised on that portion of the estate over which it is not expressly given, although, in another portion of the will, general words are used broad enough to justify an implication that the whole estate should be subject to the power.

3. There is a marked distinction between the purposes shown by a specific devise of real estate, and a devise by way of residue; the first shows that the testator means the devisee shall have a thing certain; the other, that the devisee shall have something which is uncertain or unknown, and cannot be described with certainty.

4. Generally, when the personal estate has been exhausted, the residuary real estate is bound to contribute first to the payment of debts, and it is not until the residuary real estate has proved insufficient, that the specifically-devised estates become liable.

---

On final hearing on bill and answer.

*Mr. William Pennington,* for complainants.

*Mr. John R. Emery,* for defendants John D. Anderson and Helena Price.

The Vice-Chancellor.

This is a suit by executors asking for construction and direction. Several questions are propounded. The only one that received much attention from counsel, or has required much examination, may be stated as follows: Did

Anderson's executors *v.* Anderson.

the testator mean that the rents of the real estate specifically devised, should be applied, concurrently with the rents of the residuary real estate, to the payment of his debts, or, that the residuary real estate should be first appropriated to that purpose?

His first direction touching the payment of his debts is given in these words: "I direct my executors to pay and satisfy all my just debts, including all encumbrances on my estate, or any part of it, whether specifically devised or not, either by way of taxes, assessments, mortgages or otherwise, as soon as may be after my decease." Then, by the eighth clause of his will, he says: "I hereby direct my executors, out of the rents and profits of my estate, or by mortgaging or charging the same, or a competent part or parts thereof, to raise in aid of my personal estate, if insufficient, so much money as shall be requisite to satisfy and pay all my just debts, including all encumbrances on my estate, or any part of it, whether specifically devised or not, either by way of taxes, assessments, mortgages or otherwise, and apply the money to be raised accordingly." The next four clauses make specific devises to his four children, each devise being prefaced by these words: "And immediately after all my debts shall have been fully paid and satisfied by my executors, in manner aforesaid, I give, &c." By the residuary clause, the executors are given power to manage his residuary estate for a period of ten years, including power to rent the same, and to collect and receive the income thereof, and to invest and re-invest the same, and to insure, cultivate, improve and care for the same until divided or disposed of; and until a final division is made, the executors are authorized to sell and convey any part of the residuary real estate which they may deem it judicious to dispose of, and upon such terms as they may think proper; a desire is expressed that the executors shall, during the period of ten years, exercise their best discretion in keeping together, selling, investing or dividing all or any part of the residuary real estate, that the same may be

managed to the best advantage.    The final direction for division is as follows: "And as to the said residue and remainder of my estate and property, of whatever nature, I direct to be divided into four equal parts," and one-fourth part is given to each of his children.

The personal estate applicable to the payment of debts, being insufficient to pay all, resort must be had to the real estate.    The lands given specifically to two of the devisees are, together, subject to a mortgage of $10,000; there are no other encumbrances, but the bill alleges that there are simple contract debts still outstanding, amounting, in the whole, to about $10,000.    The executors estimate the residuary real estate to be worth $53,000.

From what source shall the money come to pay these debts?    The executors claim that the rents of all the real estate, whether specifically devised or not, must be appropriated, while two of the devisees contend that the residuary real estate must first be devoted to that purpose.    The theory of the executors is, that while the devisees take immediate, vested estates in the lands, their right to possession and enjoyment is postponed until sufficient money has been raised, from rents of all the real estate, to pay the debts.    The theory of the executors rests principally on the direction to them to raise money out of the rents and profits of the testator's estate, or by mortgaging or charging the same, or a competent part or parts thereof, and on the words immediately preceding the words of gift in each devise.    The decision of this question must be governed by the intention of the testator.    If that can be clearly seen, it must be carried into effect.    His will is a law unto the court as well as to the beneficiaries.

Power is conferred to raise money by two methods: first, by setting apart rents and profits, and, second, by mortgaging or charging.    The words "my estate," read literally, embrace the whole estate, comprehending those portions given by specific devise, as well as those portions passing under the residuary clause.    Both methods have

the same purpose, and comprehend exactly the same estate. No preference is indicated as to which should be first employed. The executors are at liberty to adopt either. If the power of mortgaging was exercised upon the lands specifically devised, the encumbrance thereon would not be removed; if money was raised by this method to pay simple contract debts, the burden on those lands would not be removed or diminished, but increased. The power to take rents and to mortgage unquestionably refer to the same property. No other construction is possible. One of the testator's most conspicuous purposes in creating this power was to favor the specific devisees; he twice directs that it shall be used to relieve their lands. He intended that it should be used for their benefit. Would it not be absurd to say that he intended it should be used against the very property that he created it to relieve? I think it is entirely plain, that the testator did not mean that the power to mortgage should be exercised against the lands specifically devised.

Did he mean the power to take rents and profits should apply to those lands? Both powers are conferred in the same sentence, and in language precisely identical, the subject matter of each being described by the words " my estate." It would seem to be undeniable, therefore, they were both intended to operate upon exactly the same property. If the executors cannot mortgage the lands specifically devised, it would seem to be perfectly clear that they have no right to the rents and profits arising from them. It would be a dangerous anomaly in legal construction to hold that, where two powers are conferred in the same sentence, and by the same words, and the subject or property on which they are to operate is described by the same words precisely, that the testator means, if the power first-mentioned is used, it shall be exercised against his whole estate, but, if the other is used, it shall only be exercised against a part of his estate. Such a construction might, in some cases, make a better will than that made by the tes-

tator, but the court is not at liberty to make wills; it must restrict itself simply to the work of construction and definition.

No estate is given to the executors in the lands specifically devised. It is admitted the legal title is in the devisees; nor are the executors authorized, by express words, to take their rents and profits. Their right to do so, if they have any, rests upon implication. With respect to the residuary real estate, such power is expressly given; they have a right to let it, and to receive the rents, and also to sell and convey any part of it which they may deem judicious to dispose of. The fact that power is expressly given to them over one portion of his estate, and not over the other, shows, very clearly, I think, that the testator intended that they should exercise it only on that portion of his estate over which it is expressly given, and not on that portion of his estate over which it is not expressly given, although, in a preceding part of his will, he has used general language broad enough to justify an implication that he intended his whole estate should be subject to the power.

A marked diversity of opinion exists as to whether, where there is a specific devise of land, and, also, a devise by way of residue, resort can be first had, for the payment of debts, to the land devised as residue, or whether each class must contribute ratably. Those who adhere to the view that each must contribute ratably, ground their opinion mainly on the theory that all devises of land, whether the land be designated by certain description or as residue, are specific. To my mind, there is a very marked distinction between the purposes manifested by the two forms of gift. Every specific devise, by its very nature and form, plainly shows that the testator means that the devisee shall have the land given free from liability to contribute to charges not fastened upon it, while the form of the other indicates, with equal clearness, that the testator means the devisee shall only have what may be left after the first devisee has received his gift; that he shall receive some-

thing which is uncertain or unknown, and cannot be described with entire precision. Lord Romilly, master of the rolls, in *Brownson* v. *Lawrance, 6 Eq. Cas. 5*, says: "The fact of the testator having specifically devised part of the mortgaged estate, and left the other part to pass by the general residuary gift, is, of itself, an expression of his intention that the part which passes by the residuary gift shall be primarily liable to the whole of the mortgage debt in exoneration of the part which is specifically devised." Such intention is made so conspicuous as to be indisputable, when, in addition to the evidence furnished by the form of the gift, the testator directs that the fund to be raised in aid of his personal estate, for the payment of debts, shall be applied in discharge of liens charged on the lands specifically devised. In the case under consideration, the testator has twice declared his purpose to give the lands specifically devised, free from the liens thereon. The first expression is found in his general direction for the payment of his debts, and the second in the clause conferring power on his executors to raise money for that purpose, in case his personal estate is not sufficient. This purpose, in my judgment, is utterly inconsistent with the notion that he intended to give his executors power either to mortgage the lands specifically devised, or to take their income. Vice-Chancellor Bacon, in *Lancefield* v. *Iggulden, L. R. (17 Eq.) 560*, said: "When the personal estate has been exhausted, the residuary real estate is bound to contribute towards the payment of the testator's debts, and it is not until the residuary real estate has proved insufficient that the specifically-devised estates become liable."

My conclusion is, that the testator intended, in case of deficiency of personal estate applicable to that purpose, for the payment of his debts, that resort should be first had to his residuary real estate, and not to the residuary and that specifically devised concurrently. The words " and immediately after all my debts shall have been paid and satisfied by my executors in manner aforesaid," immediately preceding each

of the specific devises, stand opposed to this conclusion. If, in searching for the testator's meaning, we are to look at these words alone, and at no other provision of the will, it is impossible to reach the conclusion just stated; but this is not the true method. The will must be read as a whole; each of its provisions must be given full effect, if possible; if there is dissonance among them, each must be read in the light of the others, and harmony thus produced. If, in this way, the main purpose or scheme of the testator can be discerned, such construction must be adopted as will give it effect. Reading the will in this case according to this rule, I think the office of the clause under consideration must be understood to be, simply to declare that if the residuary real estate shall prove insufficient for the payment of the debts, then resort shall be had to the lands specifically devised. No other construction seems to me to be possible, if we survey the will as a whole and direct our search to the discovery of the testator's general, testamentary scheme.

In my opinion, the rents of the lands specifically devised falling due after the testator's death, belonged to the devisees, and, to the extent that the executors have appropriated them, they are answerable to the devisees.