IN RE ESTATE OF PETER J. FOX, DECEASED.

Argued April 17, 1950—Decided May 29, 1950.

Mr. *Arthur C. Mullen* argued the cause for appellant Anna Ryan Fox, individually and as co-executrix of the will of Peter J. Fox, deceased. *Messrs. Armstrong & Mullen,* attorneys.

Mr. *Walter E. Cooper* argued the cause for respondents Georgina Fox, Cecelia Fox, and Frances A. Fox, individually and as co-executrix of the will of Peter J. Fox, deceased. *Mr. Irving C. Picker,* attorney.

The opinion of the court was delivered by

HEHER, J. The issue here is one of testamentary construction.

The testator, Peter J. Fox, died December 26, 1938. His will was made October 16, 1931. He devised the residue of his estate, real and personal, remaining after payment of his debts and certain general and specific legacies, to his wife, Anna Ryan Fox, and his three sisters, Georgina Fox, Cecelia Fox and Frances A. Fox, in equal shares, the survivor or survivors to take the share of such of these legatees as should predecease the testator. The residuary bequest was made the subject of paragraph 6 of the will. .

Paragraph 7 is in these words:

"I hereby direct, authorize and empower my said executrices, in their absolute and uncontrolled discretion and as they shall think fit to continue for the benefit of my estate, and for such periods or respective periods as they shall think expedient, any business enterprise in which I may be engaged or interested in at the time of my death, whether alone or in partnership or otherwise, with any person, persons, or corporations."

And paragraph 8 makes the following provision:

"I direct that during and until my estate shall have been sold or converted into cash, my said executrices shall pay to my said wife, Anna Ryan Fox, the sum of $15.00 each week."

There were no payments to the widow under paragraph 8; and the subject matter of the litigation is the widow's claimed right to priority of payment of the accumulated arrearages out of both *corpus* and income.

At the time of his death, the testator owned 90% of the capital stock of the Phox Bus Company, the corporate operator of a single-bus franchise on Bergen Avenue in Jersey City. The assets of the corporation consisted principally of the franchise and the bus devoted to this use; there was little else. This was the only "business enterprise" in which the testator was "engaged or interested" at the time of his death. It was likewise his only business and his only source of income

at the time the will was made. The testator and his wife were cohabiting together at the time of the making of the will and at the time of his death; and her welfare after his death was undoubtedly his primary concern.

The will was probated March 24, 1939. On April 6th following, a decree of insolvency was entered against the Bus Company in the Court of Chancery of New Jersey, and a receiver was appointed. *Taylor v. Phox Bus Company,* 127 *N. J. Eq.* 255 (*E. & A.* 1940). The receiver continued the operation of the business until the bus was sold in December, 1944, pursuant to an order of the Court of Chancery. *Taylor v. Phox Bus Company,* 136 *N. J. Eq.* 35 (*E. & A.* 1944). Respondents' insistence on the brief that the testator was the owner of but 70% of the corporate capital stock, and that his widow, his sister Frances A., and his nephew L. Arthur Frame each owned 10% of the capital stock is resolved adversely to that contention by the statement of the evidence prepared under *Rule* 1:2–23 of this Court, and settled and approved by an order entered in the County Court on February 7, 1950. The statement certified that the estate of Peter J. Fox consisted of 90% of the capital stock of the corporation. Frame owned one share, or 10% of the outstanding shares. *Fox v. Frame,* 137 *N. J. Eq.* 177 (*E. & A.* 1945). The remainder of the stock was the testator's, according to the record.

The receiver made his accounting. Of the sum turned over by him to the executrices as the owners of 90% of the stock of the Bus Company, there now remains $15,988.97, after payment of the debts of the estate, the general and specific bequests, and the costs of the several litigations. The statement of evidence made pursuant to the cited rule recites a "net operating income earned by the corporation" during the receiver's incumbency from April, 1939, to December, 1944, after the payment of income taxes, of $8,827.43.

The County Judge read paragraphs 7 and 8 of the will as one. He held that while paragraph 8 "is a device for securing to the widow of weekly contributions pending the cash

liquidation of assets, it is one that testator explicitly conditioned * * * upon (a) the continuation of the business for *the benefit of his estate;* (b) its continuation for that benefit by *his executrices;* (c) its continuation for that benefit *during the period or periods deemed expedient* by the executrices; (d) the 'absolute and uncontrolled discretion' of the executrices *in terminating any period of such continuance."* All this, the Judge said, "has essential bearing upon the prudence and discretion of the order for the weekly payments, since the making of the payments and the accumulations resulting from their non-payment might well have become a factor in the exercise of the discretion given;" and "the continuance of the business and the occasion of required payments are so interrelated that the same testamentary discretion pervades them both." This conditioning, he observed, "was at the heart of the idea with which the paragraph was written;" also that paragraph 8 is "no more than provisional and subordinate to the larger purpose, the 'predominant idea,' of sharing the *residuum* equally among the four, supplemented by power and discretion, which was totally abortive, for the continuance of the business for their benefit as the parties in interest." The Judge continued : "It would certainly be bold to assume that the will indicates any intent that the demanded accumulation should be paid to the widow at this late date and after all that has befallen. But, assuming that to be so for the sake of argument, what right have we to say that such intent was stronger than the intent expressed with perfect clarity, and still susceptible of full compliance, that the equal sharing by the widow and the sisters under paragraph 6 should be preserved? These questions emphatically answer themselves. Obviously as between the accumulated payments and the equal sharing there must be a choice. Both cannot be had." And he also entertained the view that "the weekly payments were to provide a current contribution, the period of their requirement being always in discretional control, with no reasonable likelihood of arrearages under the scheme devised, and with no thought of arrearages indicated and none

provided for." He could find "no basis for the operation of the paragraph in question;" and he concluded that "the paragraph must abate" as "presently inefficacious and presently prohibitive of the equal distribution of the residue, which is the dominant feature of the will as it relates to these contestants."

But this reasoning imposes conditions upon the operation of paragraph 8 which are not to be found in the will. It proceeds on the hypothesis that the weekly payments to the widow were to be made only so long as the executrices, in their discretion, should deem the continuance of the corporate business to be beneficial to the estate. The payments to the widow were not made dependent upon the exercise of such a discretion. The executrices were directed in peremptory terms to make the weekly payments to the widow "during and until my estate shall have been sold or converted into cash." Obviously, the testator had in mind the provision of sustenance for his widow until his estate had been converted into cash, and her share of the residue made available to her. Having bequeathed the residue of the *corpus* to his widow and three sisters in equal shares by the prior paragraph 6, the design to draw upon income for the weekly payments to his widow appears by clear implication; and the sole source of income was the corporate business. Until his interest in the Bus Company had been converted into cash, the *corpus* of the estate would not be available for that purpose; and when a conversion was had, the obligation of weekly payments would cease *ex vi termini*. When we consider the relationship of the legatees, the nature and *quantum* of the estate, the circumstances of the business, and the prior gift of the *corpus* and the general testamentary scheme, it is evident that the payments to the widow were intended to be payable out of income in complete exoneration of the *corpus*.

The judicial interpretive function is to find the meaning of the testator as expressed in the language used, considered in the light of the attendant circumstances, and effectuate it. *In re Fisler*, 133 *N. J. Eq.* 421 (*E. & A.*

1943). Extrinsic evidence is not admissible to vary, enlarge, or contradict the terms of a will, for that would set at naught the statutory mandate that testamentary dispositions be in writing and attested by witnesses. But, in aid of the testatorial intention, evidence is admissible to place the construing court in the situation of the testator at the time of the execution of the will. For the purpose of determining "the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will." *Noice v. Schnell,* 101 *N. J. Eq.* 252, 272 *(E. & A.* 1927). *Vide Griscom v. Evens,* 40 *N. J. L.* 402 *(Sup. Ct.* 1878)* ; affirmed, 42 *N. J. L.* 579 *(E. & A.* 1880).

▇ It is a substantive canon of construction that effect be given, if possible, to all provisions of the will, if not in conflict with each other or with the general intention revealed by the instrument as an entirety. This is elementary principle.

▇ It is not of the judicial province to reconstruct the will and to provide for a contingency unforeseen by the testator. Here, the County Judge nullified the 8th paragraph because he conceived it would interfere with "the equal distribution of the residue" which he deemed "the dominant feature of the will." The hypothesis is faulty. The surviving spouse is ordinarily the primary object of the testator's bounty. It is evident here that the testator had in view provision for his widow until his estate had been converted into cash; and this without regard to the circumstances delaying the day of conversion. It goes without saying that the testatorial intent is not determined by an after-occurring contingency unprovided for because unforeseen by the testator. Is there any reason to suppose that, if the testator had foreseen the event,

he would not have made provision for a weekly allowance to his wife pending the final distribution? That supposition would be utterly unreasonable.

The arrearages due the widow under the 8th paragraph are payable, with compensatory interest, from that portion of the moneys in the hands of the executrices which represents income derived from the operation of the corporate business. See, as to interest, 2 *Am. Jur.* 829; 3 *C. J. S.* 1381. The record will be remitted for a determination of that question.

The judgment is accordingly reversed; and the cause is remanded for further proceedings in conformity with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT and WACHENFELD—4.

*For affirmance*—Justices CASE and BURLING—2.