39 N.J. Super. 392 (1956)
121 A.2d 35
DORA GREENE, JOAN GREENE SUSLOW AND BARBARA GREENE DUNN, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS,
v.
LEON SCHMURAK, ROBERT SCHMURAK AND BEATRICE ALTEROWITZ KREPPEL, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 5, 1956.
Decided March 13, 1956.
*394 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Reuben P. Goldstein argued the cause for appellants and cross-respondents.
Mr. Milton T. Lasher argued the cause for respondents and cross-appellants.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The primary question involved on this appeal is whether decedent's will comes within the rule of construction that where a will devises a full estate in fee, a subsequent provision purporting to give the same devisee a lesser estate in the property is repugnant to the initial disposition and therefore void.
Rose Schmurak, an elderly widow, died testate on January 4, 1952, leaving three children: a daughter Dora Greene, one of the plaintiffs and a deaf-mute, and two sons, Leon and Robert Schmurak, defendants herein. At the time of the death Dora was married to a deaf-mute and had two children, Joan and Barbara, who are adults and have joined as plaintiffs in this action. Decedent's residuary estate consisted of two bank accounts totalling $2,828.06, and three apartment buildings: one consisting of 4 apartments in Edgewater, N.J., one of 16 apartments in Cliffside Park, N.J., and one of 17 apartments, together with two stores, in West New York, N.J. She disposed of her residuary estate in the third paragraph of the will, which provided:
"Third: All the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever situate, and every interest therein, I give, devise and bequeath unto my children, Dora Greene, Leon Schmurak and Robert Schmurak, to them, their heirs and assigns forever, to be divided among them in the following proportions, viz.: Fifty (50%) per cent to my daughter, Dora Greene, twenty-five (25%) per cent to my son, Leon Schmurak, and twenty-five *395 (25%) per cent to my son, Robert Schmurak. It is my wish, and I hereby direct that my said estate be divided in such manner only so long as my said sons, Leon Schmurak and Robert Schmurak, retain possession of all of my real estate; should my said sons, Leon Schmurak and Robert Schmurak dispose of or sell my said real estate, then and in that event I hereby direct that my said residuary estate be divided among my said daughter, Dora Greene, and my said sons, Leon Schmurak and Robert Schmurak, in the following proportions, viz.: Seventy (70%) per cent to my said daughter, Dora Greene, fifteen (15%) per cent to my said son, Leon Schmurak and fifteen (15%) per cent to my said son, Robert Schmurak."
The fourth paragraph of the will provided:
"Fourth: I hereby appoint my sons, Leon Schmurak and Robert Schmurak and Beatrice Alterowitz, to be executors of this my Last Will, with full, complete and ample power to sell, mortgage, lease or otherwise dispose of my property, real, personal and mixed, at such times, at such prices and upon such terms as they may deem best, and to give and execute all necessary or required documents to consummate any such disposition thereof, and I give them power to retain such of my investments as they may deem it wise to retain, notwithstanding such investments may not be investments such as are permitted to be made by executors under the laws of New Jersey. I request and direct that my said executors be not required to give bonds as such in any jurisdiction."
The fifth paragraph of the will stated:
"Fifth: It is my wish and I hereby direct that the share of my daughter, Dora Greene, herein devised to her, be paid over to her in monthly installments of One Hundred ($100.00) Dollars, each and every month during the term of her natural life, and upon her death, I give, devise and bequeath her share in my said estate, unto her children, to them, their heirs and assigns forever. It is my further wish, and I hereby direct that in the event that said sum of One Hundred Dollars ($100.00) each month, shall not be sufficient for my said daughter, Dora Greene, to get along on, then she shall be paid such sum in excess thereof, each month, as shall be necessary for her to get along on."
By their complaint plaintiffs charged that they had tried to get the executors to dispose of the real estate because the return therefrom did not justify its retention and was inadequate to give Mrs. Greene the sum of $100 each month, besides such monies as she might need to "get along on," as *396 provided in the will; and that although the executrix Beatrice Alterowitz, now Kreppel, had taken a neutral position  whatever was agreeable to the other executors and to plaintiffs was acceptable to her  the executors, Leon and Robert Schmurak, were willing to dispose of the property only on condition that the provisions of the will be disregarded and the proceeds divided into equal shares, one-third to go to each of decedent's children. Plaintiffs contended that Mrs. Greene was entitled to receive her portion of the proceeds in full and in one lump sum in the event of sale, but that the two executors had taken the position that the fifth paragraph of the will was controlling. The complaint further charged that the two executors were not exercising their best judgment in the interest of the estate, because of their conflicting personal interest, and that they had shown bad faith by refusing to dispose of the real estate or any part thereof when the circumstances so required. There was a further claim that the executors had not filed a formal accounting, but this phase of the case was later abandoned when the executors stated that an account would soon be presented. This was done. Plaintiffs demanded judgment construing the will, directing the executors to dispose of all or part of the real estate, directing Leon and Robert Schmurak to refrain from taking any management fees and to restore such sums as they had taken theretofore, and requiring these two executors to resign or to be removed.
Defendants in their answer alleged that they had performed their duties as executors in a proper manner, had not abused their discretionary power of sale, and had never permitted their personal interests to conflict with that of their sister. The executrix Beatrice Kreppel did not answer, and a default judgment was taken against her.
After a hearing the trial court held that the will, read as a whole, clearly showed that defendants' primary and dominant intention was to insure a monthly income to Mrs. Greene, for life. Greene v. Schmurak, 34 N.J. Super. 115 (Ch. Div. 1955). Judgment was entered declaring that defendants each had a 25% interest in the residue in fee, *397 subject to being divested to the extent of 40% of their prospective shares in the event of their sale of the real estate, and directing that the remaining 50% of the residue be held in trust by the executors to pay $100 monthly to Mrs. Greene, and if that proved insufficient for her to get along on, such further sum monthly as would be necessary for the purpose. In the event that defendants' shares were reduced, such shares were to be added to the trust, the corpus of the trust to go to Mrs. Greene's children in fee upon her death. The judgment further approved the action of the executors in retaining the real estate, and allowed executors' commissions on corpus and income at the rate of 5% and trustees' commissions on corpus at the rate of 1%. It also upheld plaintiffs' exception to that part of the executors' account seeking allowance for management fees, and directed the executors to set off against their executors' and trustees' commissions the monies theretofore withdrawn by them as management fees.
Plaintiffs appeal from those parts of the judgment construing the will, approving retention by the executors of the real estate, and allowing executors' and trustees' commissions on corpus. Defendants cross-appeal from the disallowance of management fees.
We must first dispose of the preliminary question as to whether N.J.S. 3A:3-16, referred to in the trial court's opinion, 34 N.J. Super., at page 119, and in the briefs, has any applicability. This statute (L. 1951, c. 325) was adopted following the opinion by a divided court in Fox v. Snow, 6 N.J. 12, 14 (1950). It provided:
"In any devise or bequest of real or personal property set forth in the will of a testator dying after January 1, 1952, the giving to one person of an indeterminate or other interest in the property or an estate in fee therein or absolute ownership thereof, together with a power, absolute or otherwise, to dispose of the property, shall not be construed to render void a limitation over of the property to another person which is to take effect in the event that the first named devisee or legatee shall not have disposed of the property during his lifetime. In all such cases, the testator's intent shall be given effect."
*398 The statute is not applicable in the circumstances of this case, primarily because Mrs. Greene was given no power to dispose of the property devised to her under the will of her mother. There is the further thought that only the holders of the remainder interest would have a right to invoke the statute, and in this case they are Mrs. Greene's daughters, her co-plaintiffs, who seek the same relief as she does.
Plaintiffs claim that the first sentence in paragraph 3 of the will clearly gave Mrs. Greene a fee simple interest in at least half the real estate, and that the fifth paragraph is void because it is repugnant to the earlier provision, citing Cree v. Kennedy, 14 N.J. Super. 440 (Ch. Div. 1951); Wooten v. Harvey, 1 N.J. Super. 406 (Ch. Div. 1948); and Kutschinski v. Sheffer, 109 N.J. Eq. 659 (E. & A. 1932). Also cited is Parmentier v. Pennsylvania Co., etc., 122 N.J. Eq. 25 (Ch. 1937), affirmed o.b., 124 N.J. Eq. 272 (E. & A. 1938), but this case does not really deal with the question before us and is completely distinguishable.
A number of cases in this jurisdiction have stated that where a testator has manifested an intent to vest an absolute fee simple in the first taker, a subsequent limitation thereof is void as inconsistent with the rights of the first taker. The rule was first projected in Den v. Gifford, 9 N.J.L. 46 (Sup. Ct. 1827), but there the court found no proof that the testator intended to use the word "heirs" in the devise to the first taker in a sense different from its legal signification, or that he did not mean what the technical language used by him would import. In Galante v. Silverstein, 98 N.J. Eq. 52 (Ch. 1925), Vice-Chancellor Backes flatly adhered to the rule in a single brief paragraph, without discussing or exploring what the testator's intention might have been. Gaston v. Ford, 99 N.J. Eq. 592 (Ch. 1926), sometimes cited in support of the rule, dealt with a devise to A in general terms only, expressing neither fee nor life estate, but there was also given to A an unlimited and unrestricted power of absolute disposal. There was a subsequent devise to B at A's death of any of the property not disposed of prior thereto. The devise to A was construed to pass a fee and the gift over held *399 invalid. This is not the case here. The rule in that case was followed by a majority of the Supreme Court in Fox v. Snow, above.
The Court of Errors and Appeals embraced the rule first hereinabove mentioned in Kutschinski v. Sheffer, 109 N.J. Eq. 659 (1932), where it affirmed on the opinion of the vice-chancellor below. The vice-chancellor, after making passing reference to what is undoubtedly the overriding principle in the law of will construction  that the testator's intention, if manifest, must control  had observed that "What he [testator] had in mind can only be conjectured." He said that rather than resort to surmises, he would be guided by the stated rule of construction. We do not consider Kutschinski as controlling in the circumstances of this case.
Our Chancery Division followed Kutschinski in Wooten v. Harvey, 1 N.J. Super. 406 (1948). The same judge decided Cree v. Kennedy, 14 N.J. Super. 440 (Ch. Div. 1951), which followed the stated rule.
Another case often cited in support of the rule is Trafton v. Bainbridge, 125 N.J. Eq. 474 (E. & A. 1939), where the testamentary language was altogether different from that found in the will before us. In the course of its opinion the court there stated, by way of dictum, the rule which plaintiffs contend is applicable to this case.
The first duty of the court in the construction of a will is always the ascertainment of the testator's intention. In re Fox's Estate, 4 N.J. 587, 594 (1950). In this process it is guided by broad principles of interpretation and the very much narrower rules of law called rules of construction. The court resorts to these narrower rules only where the testator's intention is not discoverable under the broad principles of interpretation. In his definitive treatment of the law of wills and administration, now Judge Clapp stated:
"The modern tendency in the construction of wills is to be bound lightly by precedents; the court is concerned less with stabilizing the significance of the language of the law than with effectuating the testator's intentions." (5 New Jersey Practice (Clapp, Wills and Administration) (1950), § 103, p. 236. Citations omitted.)
*400 The author observes that although it is important to examine the interpretation which courts have put upon other wills, one must bear in mind that "rules of construction derived from other cases are pliable, yielding to the instant testator's manifested intention and serving but to assist in ascertaining his intention." See Post v. Herbert's Ex'rs, 27 N.J. Eq. 540, 542 (E. & A. 1876, last paragraph, Beasley, C.J.); Colwell v. Duffy, 109 N.J.L. 423, 424 (E. & A. 1932), where it was held that all arbitrary rules of construction must give way to the ascertained intention of the testator.
The testator's intention governs the construction to be put upon his will. Shriver's Lessee v. Lynn, 2 How. 43, 43 U.S. 43, 56, 11 L.Ed. 172 (1844). That intention "is a law unto the court," Anderson's Ex'rs v. Anderson, 31 N.J. Eq. 560, 562 (Ch. 1879). It has been said that "The art of construing words [of a will] in such manner as shall destroy the intent, may show the ingenuity of, but is very ill becoming, a judge." Den ex dem. Elle v. Young, 24 N.J.L. 775, 780 (E. & A. 1854). It is elementary that, to be of effect, the intention must be drawn from the words of the will read as a whole, permitting one part to illumine and reflect upon the meaning of every other part. See Clapp, op. cit., § 108, p. 247ff., and cases cited; cf. 3 Restatement of the Law of Property, § 242, p. 1196ff. The will itself must furnish the basis for construction. Kempson v. Kempson, 89 N.J. Eq. 205, 207 (E. & A. 1918). And if there be any doubt unresolved by the will and the proofs, the court will ascribe to the testator those impulses which are common to human nature, and will construe the will so as to effectuate those impulses. Hersh v. Rosensohn, 125 N.J. Eq. 1, 8 (Ch. 1939), affirmed 127 N.J. Eq. 21 (E. & A. 1940). Such should be the regard of a court for the testator's intention that it will not construe a provision to be meaningless or void except on the failure of every attempt to render it effective; "the law will weigh the faintest traces of his intention and permit unbounded indulgence to his negligence and expression." Clapp, op. cit., § 108, p. 251, and cases cited.
*401 Where the dominant idea of the testator is apparent, a court should not ignore it because of doubtful or conflicting provisions which might of themselves defeat it. Blanchard v. Blanchard, 116 N.J. Eq. 435, 439 (Ch. 1934), affirmed o.b. 122 N.J. Eq. 372 (E. & A. 1937); Gluckman v. Roberson, 116 N.J. Eq. 531, 537 (E. & A. 1934); Fink v. Harder, 111 N.J. Eq. 439, 441 (E. & A. 1932); Peer v. Jenkins, 102 N.J. Eq. 235, 238 (E. & A. 1928). When the provisions of the will are in conflict, the attempt is always to put into effect, if possible, the whole of the will. Brooks v. Goff, 127 N.J. Eq. 115, 118 (Ch. 1940).
We think the Supreme Court plainly indicated the application of these principles in a case involving substantially the same problem as confronts us here, in Kelley v. North Morris Realty Co., 1 N.J. 421 (1949). In that case the residuary clause of the will provided:
"All the rest, residue and remainder of my estate and property, real and personal, wherever the same may be I give, devise and bequeath unto Frederica Donaldson (daughter of Frederick and Mary Donaldson, both deceased), and now called Frederica Beemer. If the said Frederica Donaldson shall die without leaving any lawful child or children of hers surviving, then it is my will that the estate and property herein bequeathed and devised to her shall be divided among my heirs-at-law living at the time of her decease."
A unanimous court held that although the first sentence, standing by itself, gave an absolute fee to Frederica, nevertheless the second sentence was not void as repugnant to the preceding one. The court said: "The two sentences constituting the whole provision, must be read together to ascertain the intention of the testatrix," and held that the first taker did not take a fee simple absolute, but merely a vested fee subject to being divested at her death if she died without lawful children her surviving. This decision, like others already cited, repels the idea that the granting of a fee absolute in an earlier part of a will necessarily controls a later provision cutting down the interest granted if the two provisions can be read together to reflect a clearly manifested testamentary intention to the contrary.
*402 Guided by these principles, our courts have sought out the intention of the testator and held, in circumstances like those which obtain in this case, that the first taker was given a life estate only, with fee simple over. Jones' Ex'rs v. Stites, 19 N.J. Eq. 324 (Ch. 1868, Chancellor Zabriskie); West Side Trust Co. v. Giuliano, 106 N.J. Eq. 475 (Ch. 1930); Reid v. Stankowitch, 10 N.J. Misc. 1006 (Ch. 1932); and Higgins v. Mispeth, 118 N.J. Eq. 575 (Ch. 1935), where the Galante, Kutschinski and other cases cited above were discussed. And see the comment on the Higgins case by now Judge Clapp in 58 N.J.L.J. 377, 379 (November 14, 1935); Clapp, op. cit., § 233, pp. 543-544. Cf. the dissent of Chief Justice Vanderbilt in Fox v. Snow, 6 N.J. 12, 14ff. (1950).
In the West Side Trust Co. case, Vice-Chancellor Backes, the same jurist who wrote the opinion in the Galante case, said:
"In the will under consideration the testator, after giving to the nephew what otherwise would be an absolute estate, cut it down and put an end to it at the nephew's death by giving the residue to his issue and over to the nieces upon failure of issue. The gift in remainder, though it be in a different paragraph, is as pregnant of meaning as the language of the absolute gift to the nephew and cannot be ignored or discarded because it is in conflict with the initial gift. Apparent conflict in provision must be reconciled so that the whole may stand and all parts of the will be given their full significance. The applicable rule of construction is declared in Jones' Executors v. Stites, 19 N.J. Eq. 324, where the chancellor, in addressing his remarks to the language of a will substantially like the one under consideration, said: `The terms on which this residue is given to the two daughters, would give them the absolute estate, were it not for the subsequent limitations; they are adapted to that purpose, and nothing but a clear expression of a different intent would control them. But it is well settled that a devise of lands or bequest of chattels, by words which clearly would give the absolute estate, will be construed into a devise or bequest for life only, if the will contains words giving it to another upon the death of the first taker.'" (106 N.J. Eq., at pages 477-478)
Cf. Smith v. Bell, 6 Pet. 68, 31 U.S. 68, 74, 8 L.Ed. 322 (1832, Marshall, C.J.).
*403 It was conceded in the trial court that plaintiff Mrs. Greene, a deaf-mute, was the object of her mother's special solicitude, and was in the testatrix' mind at the time she wrote her will. We find the testamentary intention manifest. The mother knew that almost all of her estate consisted of the three apartment houses. It is reasonable to assume that she had a strong belief in the security and productiveness of real estate as an investment, and considered these properties an important asset which should be preserved so that the 50% interest devised to the daughter might produce the $100, or more if necessary, directed to be paid to her monthly, as long as she lived. As a matter of fact, in order to insure that the residuary estate would be retained by her sons, whom she named as executors, she provided in the third paragraph of the will that if they disposed of the real estate they were to suffer a 40% reduction in the shares devised outright to them. The fourth paragraph gave the executors absolute power to deal with the property in such manner as they, in their discretion, thought best, and in the fifth paragraph testatrix, as noted, directed that the share she had devised to her daughter be paid over to her in monthly installments of $100 for life, or as much more as was necessary, the share to pass to her daughter's children in fee when the daughter died.
Reading the entire will and reconciling all provisions, as we must, and considering that Mrs. Greene was the special object of her mother's concern, we are convinced that testatrix did not mean that her daughter take an outright fee simple by devise, but that her share in the real estate (50% or, if the apartment buildings be sold by the sons, 70%) be a source from which the $100 monthly payments were to be derived. To hold otherwise would amount to our completely disregarding all of paragraph 3 of the will following the first sentence, and paragraph 5 in its entirety. Were we to do so we would, in truth, be saying that the decedent meant nothing by what she said in the rest of her will. This is an untenable assumption. We cannot ignore the basic principle that the provisions of a will are not to be construed as *404 meaningless except on the failure of every attempt to render them meaningful and effective. In re Fox's Estate, above, 4 N.J., at page 594.
To apply the technical rule which plaintiff urges upon us would be to blot out most of the will. There is, of course, nothing to show that the testatrix had even an inkling of the possibility that such a technicality of construction might cut across her testamentary plan  a plan clearly, albeit inartistically, stated  and so frustrate her intention. Cf. Gray, Restraints on the Alienation of Property (2d ed. 1895), 66, 67. If it be argued that the draftsman of the will  who it was is not made evident in the record, although the indications are that it was a lawyer  was acquainted with this technical rule of construction, but still used language which he knew would be abortive because of the rule, then a fraud would have been visited on the testatrix. And if he were unaware of the technical rule, the effect would be the same  to perpetrate a fraud on the decedent. See Fox v. Snow, above, 6 N.J., at page 18. In the circumstances, it cannot be suggested that the rule would promote any good object.
In the light of the above we conclude that Mrs. Greene did not take an outright fee simple interest in the residuary estate, but that the executors are required to hold her share in trust for her and to pay her $100 a month, or as much more as she may reasonably need, for life, out of her share in the estate, with the remainder over to Mrs. Greene's daughters upon her death. Her share in the estate will be 50% as long as the apartment buildings are retained by the sons; should they elect to sell them in the lifetime of Mrs. Greene, she will then be entitled to a 70% share. The status of the executors in relation to the real estate, or of the proceeds that may be derived from their sale, is that of trustees.
It follows that the Chancery Division judgment was correct in approving the action of the executors in retaining the real property.
Although the $2,828.06 left in testatrix' bank accounts was insufficient to pay all the debts and administrative expenses of the estate, totalling $7,536.20, the income from the *405 apartment houses still proved sufficient to produce enough to pay off all these obligations as well as the $100 a month required to be paid to Mrs. Greene. The debts and expenses having been cleared, and the sons (as we shall soon mention) not entitled to the managerial fees which they have been paying to themselves, amounting to over $3,500 since the death of the mother, there will now apparently be sufficient income from Mrs. Greene's share in the real estate to pay her such sums (if any) in excess of the $100 a month as she may reasonably need. No claim of such need is presently made.
Plaintiffs contend that the executors were not entitled to corpus commissions, and this on the premise that Mrs. Greene got an absolute interest in the property, in common with her brothers, and that there was therefore no duty which the executors had to discharge as to her interest. We do not agree. As just stated, there were not sufficient personal assets in the estate to pay administration expenses and debts, without resort being made to the income from the real estate. The executors had a right to deal with the realty as part of the estate. Since the real property came into their hands for that purpose, it was a part of the estate and they were entitled to corpus commissions. See N.J.S. 3A:10-3. They were also entitled to trustees' commissions on corpus.
Defendants cross-appeal from the refusal of the trial court to allow a fee to the executors personally for their management of the real estate. Here, again, the trial court was correct in disallowing the management fee items in the accounting and upholding plaintiffs' exception thereto, and in ordering the executors to offset the management fees theretofore withdrawn by them against the amounts due them for commissions as executors and trustees. One appointed an executor does not, by virtue of his executorship, have the right to manage real estate and derive a fee therefrom. True, defendants' management has been without criticism, and to the benefit of the estate. It appears that it would be advantageous to all concerned if they continued their management, *406 but they may not, without the consent of all parties in interest, charge the estate with management fees. The issue has been decided in Wilkinson v. Abbott, 30 A. 1098 (Ch. 1895) (not officially reported), where the court held that it was the policy of this State not to allow executors to hire one of their number to perform services necessary to the maintenance of the tenantable condition of the property. The cases upon which defendants-cross-appellants rely are not in point. All they hold is that if an executor does engage a managing agent for the property, he may be allowed the fees charged by such agent. In re Linn's Estate, 124 N.J. Eq. 65 (E. & A. 1938); In re Van Riper's Estate, 90 N.J. Eq. 217 (Prerog. 1919); Parker v. Johnson, 37 N.J. Eq. 366 (Ch. 1883).
Affirmed.